T. G. BUSH GROCERY COMPANY, A CORPORATION, *Plaintiff in Error*, v. T. W. CONELY, *Defendant in Error*.

1. Where a principal has by his voluntary act, placed an agent in such a situation that a person of ordinary prudence, conversant with business usages and the nature of the particular business, is justified in presuming that such agent has au-

thority to perform a particular act, and therefore deals with the agent, the principal is estopped, as against such third person, from denying the agent's authority.

2.  Whether or not an act is within the scope of an agent's apparent authority is to be determined, under the foregoing rule, as a question of fact, from all the circumstances of the transaction and the business.

3.  Where one of two innocent persons must suffer for the wrongful act of a third, he who gave the power to do the wrong must bear the burden of the consequences.

4.  If one holds another out to the world and accredits him as his agent he is bound by that person's acts done within the scope of the agency thus given him. In such cases the question is, not what authority was intended to be given to the agent, but what authority was the third person dealing with him justified from the acts of the principal in believing was given to him.

This case was decided by Division B.

Writ of error to the Circuit Court for Jackson County.

The facts in the case are stated in the opinion of the court.

*Paul Carter,* for Plaintiff in Error.

*Price & Lewis* and *C. L. Wilson,* for Defendant in Error.

PARKHILL, J.—The plaintiff in error sued the defendant in error in the circuit court for Jackson county, for goods, wares and merchandise sold and delivered. Upon pleas of never was indebted, payment and release the jury returned a verdict for the defendant. Upon writ of error it is contended that the verdict is contrary to the evidence.

The evidence tended to show the plaintiff was a wholesale grocer in Mobile, Ala., and the defendant a retail dealer in Marianna, Fla. J. H. Parker was a traveling salesman for the plaintiff company. His authority was to sell goods at prices as instructed by the Bush Company. The plaintiff admitted that while Parker had no specific authority to collect money due for goods sold by him, yet "he did collect and we didn't object to it—we recognized his authority to collect by not objecting to it."

Mr. Bush testified that Parker was not authorized to give rebates on the bills of goods sold, and the plaintiff had no actual knowledge that Parker was allowing rebates to the defendant. Mr. Bush admitted, "some goods were billed out subject to discount, which of course we allowed  *  *  *  we allowed them for short payments, weekly payments for instance." The statements of Conely's account as it appears by the bill of particulars filed with the declaration shows the Bush Company allowed Conely deductions some times called "discounts", and other times called "rebates", ranging from 2% to 12½%, and these discounts or rebates were allowed upon 58 out of 125 purchases made by defendant from the plaintiff.

The first bill of goods in the account sued for was sold by Parker to the defendant on the 15th day of February, 1906, and Mr. Parker continued to sell to the defendant for the plaintiff during 1906, 1907, and 1908, and collected every few days the full amount due thereon less the rebate. The defendant made 125 payments within 156 weeks, as the statement of accounts in evidence shows. These bills were all receipted by Mr. Parker, except the last one that the plaintiff testified he paid. The plaintiff sent statements of accounts for the goods at least every three months. The statements contained items of original entry and did not show rebates allowed.

A. P. Bush testified: "We have books of account show-
ing the account of the plaintiff with Conely. The charges
correspond on our books with the bills on his books. The
gross amount on his books correspond with the charges on
our books. His books show all these bills settled. They
show them settled by cash and rebates. J. H. Parker al-
lowed him those rebates. At the time Parker quit us, we
claimed a balance from Conely. We sent a man named
J. P. Moore to sell goods. He is the man who receipted
and signed these last bills. The exact amount of dis-
counts is $367.10, the bill of November 19, 1908, $95.10,
added, making a total of $462.20." The defendant made
no response to statements sent him by the plaintiff. "The
remittance was not made direct to the house by Mr.
Conely. Mr. Parker was the salesman at that time; he
sold the goods and collected for them." "Mr. Parker was
short cash with the plaintiff. The entire amount of his
shortage was twenty-nine hundred dollars."

The defendant testified that he bought the goods from
J. H. Parker representing T. G. Bush Grocery Company;
that he paid Parker for the goods he bought. None of the
bills are still unpaid. The defendant offered in evidence
receipts for payment of goods bought. The bills were
marked "paid" and signed "T. G. Bush Grocery Co." The
defendant testified that Mr. Parker told him he could meet
terms on prices and wanted the business. The plaintiff
would show prices from various places cheaper than Par-
ker's and Parker would say, "I will meet those prices."
"When the bill came I paid each week. When I bought
the goods I agreed on a certain price and paid him accord-
ing to that price. That is what made those discounts in
the tobacco and snuff, and the sixty day goods being paid
promptly I was allowed a two per cent. discount on snuff
and things of that kind—on these accounts. At different
times I suppose I did take off $367.10 discount. I got

statements while I was doing business with the house. I spoke to Mr. Parker about it."

We have only partially stated the testimony, but enough of it has been set out for our present purpose.

Where a principal has, by his voluntary act, placed an agent in such a situation that a person of ordinary prudence, conversant with business usages and the nature of the particular business, is justified in presuming that such agent has authority to perform a particular act, and therefore deals with the agent, the principal is estopped, as against such third person, from denying the agent's authority. Holt v. Schneider, 57 Neb., 523, 77 N. W. Rep., 1086. Whether or not an act is within the scope of an agent's apparent authority is to be determined, under the foregoing rule, as a question of fact, from all the circumstances of the transaction and the business. Where one of two innocent persons must suffer for the wrongful act of a third, he who gave the power to do the wrong must bear the burden of the consequences. People's Bank of Belleville v. Manufacturers' National Bank of Chicago, 11 Otto (U. S.) 181, 25 L. Ed., 907; American Process Co. v. Florida White Press Brick Co., 56 Fla., 116, text 121, 47 South. Rep., 942.

If one holds another out to the world and accredits him as his agent he is bound by that person's acts done within the scope of the agency thus given to him. In such cases the question is, not what authority was intended to be given to the agent, but what authority was the third person dealing with him justified from the acts of the principal in *believing* was given to him. Griggs v. Selden, 58 Vt., 561, 5 Atl. Rep., 504, 1 Am. Lead. Cas., 568; Story's Agency, section 127, and n. 2.

We think the evidence was sufficient to support the finding that the defendant was justified in believing from the act of the plaintiff that Parker, the agent, was authorized

to allow the rebates or discounts in question here.   The plaintiff admitted that rebates were allowed for short payments—weekly payments, and the evidence shows that the defendant practically made weekly payments.  The bill of particulars filed by the plaintiff shows that rebates were allowed the defendant on snuff, crackers, &c., varying in amounts from 2 to 12½%.  How did the defendant know rebates would be allowed him?  He could have known of this only through plaintiff's agent, Mr. Parker, for the evidence shows that the plaintiff did not see the defendant until after the transaction had come to a close.  The agent allowed Conely the rebates and the plaintiff ratified this action nearly sixty times covering a period of nearly three years, during which time the defendant made purchases and payments on an average of practically every week. If the defendant had remitted directly to the plaintiff for these goods, the plaintiff, could have called attention to any shortage in payments on account of discounts allowed by Parker, but this agent was permitted to collect moneys paid by defendant'for the goods purchased.   Thus the plaintiff left the entire transaction to its agent, and thus gave the power to do the wrong and must bear the burden of the consequences.   It is true the plaintiff sent statements to the defendant every three months, which statements, according to Mr. Bush's testimony, did not show rebates allowed, although the charges on the books of the company showed rebates allowed the defendant.   Conely entered the invoice price on his books and deducted therefrom the discounts allowed by Parker.  Both parties, then, seem to have entered the invoice prices on the books deducting the rebates or discounts, and Parker collected the invoice price less the rebate, and this course of dealing continued as we have seen for about three years.   It becomes a question for the jury in a case like this where the

principal, T. G. Bush Grocery Company, had voluntarily placed its agent in such a situation that the defendant as a person of ordinary prudence, conversant with business usages and the nature of this particular business was justified in presuming that such agent had authority to allow the rebates or discounts in question. The jury decided this question in the affirmative and the evidence being ample to sustain this finding, the principal, T. G. Bush Grocery Company, will be estopped as against the defendant from denying the agent's authority.

From what we have said the court properly refused to give the affirmative charge for the plaintiff.

We think the law was correctly stated in the charges given.

There was no exception to the ruling of the court sustaining objection to the introduction of the original orders for merchandise.

Finding no reversible error, the judgment is affirmed.

TAYLOR and HOCKER, J. J., concur;

WHITFIELD, C. J., and SHACKLEFORD and COCKRELL, J. J., concur in the opinion.