53 So.2d 319 (1951)
WILSON et al.
v.
BURKE.
Supreme Court of Florida, Special Division B.
June 12, 1951.
Rehearing Denied July 9, 1951.
*320 Louis S. Joel, Jacksonville, for Nathan H. Wilson and Milam, McIlvaine, Carroll & Wattles, Ralph H. Martin and Samuel Kassewitz, all of Jacksonville, for appellants, Great Southern Trucking Co.
Will O. Murrell and Will O. Murrell, Jr., Jacksonville, for appellee.
THOMAS, Justice.
The appellee was awarded a judgment against appellants for damages arising from a collision of two motor vehicles, and this appeal followed.
The appellant, Great Southern Trucking Company's principal questions hinge on the rulings of the trial court with reference to the ownership of the truck that struck appellee's car.
It had been alleged in the declaration that the appellants were the owners of the motor tractor which was being driven by the appellant Wilson at the time of the mishap, and the company, besides pleading not guilty, denied that it owned the truck.
To meet the issue of ownership the appellee showed that the vehicle, an Autocar Diesel truck-tractor weighing 15,160 pounds, bore the inscription painted on the right-hand door in bold letters "Operated by Great Southern Trucking Co., I.C.C. Cer. M.C. 2900", while there was attached to the front bumper the tag, numbered 198, of the Florida Railroad and Public Utilities Commission. There was also introduced the application of the company for the license.
In rebuttal the company undertook to introduce the application of appellant Wilson to the Motor Vehicle Commissioner for a title certificate, the title certificate issued to him, the contract between him and the seller for the purchase of the truck, the lease of it from Wilson to the company and certain papers titled "Authorization for Payment of Regular Leased Equipment."
In order better to understand the Judge's ruling, it would be well to stop and reconstruct the transaction between appellants as it is indicated by the papers we have listed which were proffered but not admitted in evidence. The individual appellant acquired the vehicle in June or July, 1948, and immediately applied for a title certificate which was granted a month later. Within a few days after that he entered into a lease with the company which was to "continue * * * indefinitely" but which could be cancelled by either party upon ten days notice.
Under the terms of the instrument Wilson's truck was let to the company for use in transporting commodities. It was to be available to the company-lessee at its option and upon its demands, or to quote the lease, "Nothing in [the] agreement" was to be "construed, however, as requiring Lessee to use such equipment except when Lessee, at its option, elects to do so." The lessee was to pay rental of twenty cents per mile and a certain amount per hundred-weight for loading and unloading. The lessee was to have dominion over the vehicle on trips when freight was hauled, to assume liability to shipper, consignee, the public and the Interstate Commerce Commission; the lessor was to bear "all costs *321 incident to operating and maintaining the equipment, including * * * driver's wages, and fuel." He covenanted that the equipment complied with safety requirements and agreed that the lessee would not be held responsible for damage to the property from any cause whatever.
The last of the exhibits proffered consisted of seventeen sheets of paper each with the caption "Great Southern Trucking Company Authorization for Payment of Regular Leased Equipment." Upon each of these appeared the date of a certain trip, the destination, a description of the load and a statement of the distance and charge, and upon each Wilson's name as driver as well as lessor.
So a person unfortunate enough to be run down by this large and powerful instrumentality, plainly marked in the manner we have described, brought suit against the company the name of which was emblazoned on it, and during the trial was confronted with this curious arrangement creating the anomalous situation where the company wasn't the owner after all, but only the lessee, and the driver wasn't the company's agent, but the lessor and the holder of the certificate of title, although he did drive his truck for the company on stipulated trips. Further, despite the out and out lease, forever if neither party chose to end it, the company assumed dominion only on those trips. Meanwhile, the permits from the Railroad Commission and, supposedly, from the Interstate Commerce Commission had been granted to the company
The actual title to the truck was vested in Wilson; the company was the lessee.
The action, of course, was not one primarily to try title but to determine who should pay appellee. The jury found both appellants responsible.
The question narrows to the ownership, or not, of the company. When the allegation was put in issue by the plea it was not necessary to prove actual title, but only to establish who exerted such dominion over the truck as to be responsible for damage caused by it. We think the appellee met the burden in the first instance by showing that the name of the company was prominently painted on the vehicle and that the company applied to, and received from the Railroad and Public Utilities Commission permission to operate it. This was a prima facie showing of company ownership. Robeson v. Greyhound Lines, Inc., 257 Ill. App. 278; Holzheimer v. Lit Bros., 262 Pa. 150, 105 A. 73; 9 Cyclopedia of Automobile Law and Practice (Blashfield) part 2, page 367.
And we are convinced that the judge did not err when he rejected the appellants' exhibits offered in rebuttal. They would have substantiated rather than contradicted the appellant-company's responsibility by establishing that it was the lessee, hence liable in that capacity. See Bowen v. Gradison Construction Co., 236 Ky. 270, 32 S.W.2d 1014.
We cannot agree that the lease and other exhibits proffered could be used by the company as an escape route.
The other questions seem without merit too.
Affirmed.
SEBRING, C.J., and CHAPMAN and ADAMS, JJ., concur.