**BOGUE ELECTRIC MANUFACTURING COMPANY, Appellant,**

v.

**COCONUT GROVE BANK, Appellee.**

No. 17286.

United States Court of Appeals
Fifth Circuit.

July 15, 1959.

Rehearing Denied Sept. 9, 1959.

1

Linton R. Lovett, Miami, Fla., for appellant.

Leland Hyzer, Miami, Fla., for appellee.

Before HUTCHESON, Chief Judge, and TUTTLE and JONES, Circuit Judges.

JONES, Circuit Judge.

The appellant is the successor in interest through merger of its one-time subsidiary, Belco Industrial Equipment Division, Inc. In 1950 Belco, by a written agreement, made an appointment of Florida Industrial Equipment Division, Inc., as its exclusive agent in Florida for the sale of electrical and filtration equipment for swimming pools, for the period of a year. The agreement was extended from year to year through 1956. George H. Neubauer was the president, principal stockholder and the directing head of Florida Industrial. Until 1952 Belco sold equipment to Florida Industrial on open account. The equipment was sold by Florida Industrial to customers from whom it collected. The payments were deposited by Florida Industrial in its account with the appellee, Coconut Grove Bank, on which account Florida Industrial drew its checks to pay Belco for the equipment. In 1952 Belco learned that Florida Industrial had failed to remit to Belco after the collection of funds from a customer, McCann Plumbing Company. Belco then terminated the open account arrangement. Equipment was thereafter sold under written contracts, negotiated by Neubauer, between Belco and the customers. These contracts contained a clause providing, "All remittances are to be made direct to Belco Industrial Equipment Division, Inc., Patterson 3, N. J."

In July, 1956, Neubauer and V. A. Pisani, an employee of Belco, procured a check drawn on the Miami Beach First National Bank from a customer referred to as Miami Station. It was feared that the check would not be good at the expiration of the time that would be required to send the check to Belco in New Jersey for indorsement and return by it for presentment at the bank on which it was drawn. So it was arranged by Pisani and Neubauer, with the assistance of an officer of the appellee bank, that the check should be indorsed by Neubauer in the names of Belco and Florida Industrial and exchanged for a cashier's check of the Miami Beach bank on which it was drawn payable to Belco.

In most instances, during the 1952–1956 period, payments of customers were made by their checks payable to Belco and transmitted to it either directly or through Florida Industrial. In some instances payments were made to Belco through the medium of bank drafts or cashier's checks. Florida Industrial, from time to time, purchased for its own account materials and supplies from Belco for which payments were made by checks of Florida Industrial drawn on the appellee bank. Neubauer testified that checks were sometimes received by him, of which some were payable to Belco, some to Florida Industrial and some to Neubauer personally. There was no evidence with respect to any particular check or checks payable to Belco which were indorsed in its name by Neubauer and deposited in the appellee bank to the credit of Florida Industrial except the Miami Station check and the checks involved in this suit. It does not appear that Belco knew that any checks payable to it had been deposited to the account of Florida Industrial with the appellee bank. Neubauer was asked if he knew of any and replied that the only ones he could recall were from the McCann Plumbing Company jobs. These, as has been noted, were during the period when Belco was selling direct to Florida Industrial which negotiated contracts in its own name with customers and was entitled to collect from customers for its own account. It may again be noted that it was the failure of Florida Industrial to remit to Belco the collections made from McCann which caused the

change in 1952 in the method of dealings between Belco and Florida Industrial. It appears that Florida Industrial drew three checks in 1953 and two in 1954 to Belco's order which may have been remittances for payments on Belco contracts. It was not shown that any of these collections were made by customers' checks to Belco.

Between June 12, 1955, and November 27, 1956, Neubauer received from contract customers seven checks payable to Belco in an aggregate amount exceeding $17,000. These were indorsed by Neubauer with a rubber stamp indorsement bearing Belco's name and Florida Industrial's name, directing payment to the appellee for deposit to the account of Florida Industrial. On the reverse of one of these checks, dated September 9, 1955, Neubauer had supplemented the rubber stamp indorsement by writing under the name of Belco the following, "George H. Neubauer, V. P." Neubauer was not and had not ever been a Vice President or other officer of Belco. The appellee bank credited the account of Florida Industrial with the proceeds of the seven checks. In course of time Florida Industrial withdrew the funds. Approximately $10,000 was sent by cashier's checks to Belco. When Belco discovered that Neubauer had diverted its funds to Florida Industrial it made a demand on the bank and followed its demand with a suit. The case was tried to the court without a jury.

The district court concluded that although Florida Industrial had no actual authority to indorse checks payable to Belco and deposit them in the appellee bank to the credit of Florida Industrial, there was an ostensible authority so to do with which Belco had clothed Florida Industrial by a long continued course of conduct in permitting such practice.

 Florida Industrial had no express authority to indorse and deposit in its bank account checks payable to Belco. Florida Industrial was Belco's agent for the purpose of negotiating sales. Where an agent has personal property in his possession he may have an implied authority to receive payment. 2 C.J.S. Agency § 107a(2), p. 1273. There is no such presumption of power where the agent does not have possession of the goods which he is authorized to sell. Pasco County Peach Ass'n v. J. F. Solley & Co., 4 Cir., 1945, 146 F.2d 880. Cf. Boord v. Strauss, 39 Fla. 381, 22 So. 713; Tiffany on Agency 73, § 24. It follows that there would be no implied power of the agent authorized to sell by which he could lawfully indorse checks payable to his principal. 2 C.J.S. Agency § 112a (2), pp. 1301–1302.

The case was brought and tried on the theory that Florida Industrial had apparent authority to indorse and deposit in its bank account checks payable to Belco. The court held that there was such authority. The Supreme Court of Florida, whose decisions are controlling here, has this clear statement with respect to apparent authority:

"Apparent authority is such as the principal knowingly permits the agent to assume or which he holds the agent out as possessing. This rule is sometimes spoken of as the rule of agency by estoppel, and embraces three primary elements. They are: (1) A representation by the principal; (2) reliance on that representation by a third person; and (3) a change of position by the third person, in reliance upon such representation. To bring a case within the rule, all three elements must be present." Fidelity & Casualty Co. of New York v. D. N. Morrison Const. Co., 116 Fla. 66, 156 So. 385, 387, appeal dismissed 293 U.S. 534, 55 S.Ct. 348, 79 L.Ed. 642.

The foregoing definition of apparent authority was approved by this Court in Hartline v. Mutual Benefit Health & Accident Ass'n, 5 Cir., 1938, 96 F.2d 174. In an earlier case the Supreme Court of Florida stated the rule in this manner:

"Where a principal has, by his voluntary act, placed an agent in such a situation that a person of ordinary prudence, conversant with business usages and the nature of the par-

**4**

ticular business, is justified in presuming that such agent has authority to perform a particular act, and therefore deals, with the agent, the principal is estopped, as against such third person, from denying the agent's authority." Bush Grocery Co. v. Conely, 61 Fla. 131, 55 So. 867, 869.

And in a later case it was said:

"By apparent authority is meant, such authority as the principal wrongfully permits the agent to assume or which the principal by his actions or words holds the agent out as possessing. [Citing authorities]. *Apparent authority rests on the doctrine of estoppel and arises from the fact of representations or actions by the principal and a change of position by a third person, who in good faith relies on such representations or actions.*" Stiles v. Gordon Land Co., Fla., 44 So.2d 417, 421.

The burden of proving agency is on the party asserting it. Miller v. Chase & Company, 88 Fla. 500, 102 So. 553; 3 C.J.S. Agency § 315b, p. 253. Whether or not acts are within the scope of an agent's apparent authority is to be determined, under the applicable rules, as a question of fact. Bush Grocery Co. v. Conely, supra. Since findings of fact are not to be set aside unless clearly erroneous, Rule 52(a), Fed.Rules Civ.Proc., 28 U.S.C.A., we look to the record to see whether the evidence is insufficient to sustain the findings or if the findings were induced by an erroneous view of the law. Robey v. Sun Record Co., 5 Cir., 1957, 242 F.2d 684, certiorari denied 355 U.S. 816, 78 S.Ct. 20, 2 L.Ed.2d 33. It is only by evidence of acts and conduct of Belco which were known to and relied upon by the Coconut Grove Bank that the bank can prove an apparent authority in Florida Industrial to indorse checks payable to Belco and deposit them in the bank to the credit of Florida Industrial.

Belco had knowledge that Florida Industrial used a stationery with the word "Belco" at the top along with Florida Industrial's name, address, telephone numbers and cable address, and a legend at the bottom reciting "Exclusive Agent and Distributor for Belco Equipment in Florida" etc. A letter on this stationery had been written to the Bank. In 1951, Neubauer wrote Belco saying, among other things, that "in this part of the country" Belco, Florida Industrial and Neubauer "are synonymous as far as the persons with whom I deal are concerned." An officer of the Bank testified that Neubauer was even known as "Mr. Belco" in many instances. While these facts show that Florida Industrial had a connection with Belco they are not of evidentiary value in establishing an apparent authority of Florida Industrial or Neubauer to indorse Belco's checks.

The district court made a finding that Belco gave the Coconut Grove Bank no notice of the termination of the open account basis although Belco knew that Florida Industrial had deposited collections in the Bank and made remittances to Belco by checks on the Bank. While Belco was selling Florida Industrial on open account the customers purchased from and made their payments to Florida Industrial which, without impropriety, deposited checks payable to it in its bank account. It is not intimated that Florida Industrial had any authority, real or apparent, to indorse Belco's checks during the open account period. There is no evidence that it did so except Neubauer's testimony, hereafter discussed, with respect to the McCann checks. There was not, so far as we can see, any need for Belco to inform the Bank that Florida Industrial was not on an open account basis, nor was there any probative value in the showing that such a notice was not given.

There was a finding that the Bank knew that Florida Industrial was a sales agent of Belco. Its knowledge of this uncontroverted fact is not persuasive on the question at issue. It was also found that the Bank knew that Florida Industrial was remitting checks on its account in the Bank to Belco. This does not have any bearing upon the question of apparent authority to indorse and deposit.

It was found by the district court that Florida Industrial, between 1952 and 1956, remitted to Belco collections made by Florida Industrial by its checks or by cashier's checks and not by the checks of customers, and that Belco made no objection either to Florida Industrial or the Bank to this manner or remittances. These findings and the evidence which supports them would be material if Belco was asserting a claim against a contract purchaser who had made payment by a check issued to Florida Industrial in violation of the contract provision that "All remittances are to be made direct to Belco Industrial Equipment Division, Inc." No such question is here presented and we think these matters are not relevant to the question that is present in this case.

■ There is a finding that other collections were made by Neubauer in the form of checks payable to Belco which were deposited in the account of Florida Industrial and remitted to Belco by checks of Florida Industrial. Coupled with this is the finding that Belco had knowledge that it was receiving payments on its contracts by checks of Florida Industrial and not the checks of its customers. On these findings, primarily, is based the court's conclusion that Belco knew or should have known that Florida Industrial was depositing in its bank account checks payable to Belco. We think the court's inference is not warranted. Eight checks of Florida Industrial to Belco subsequent to 1952 were in evidence. Some of these were shown not to have been remittances of collections from customers on Belco contracts. Others might have been remittances of such collections but there was no proof of the fact. It was established that two, possibly three, of the checks were in payment of customers' obligations on Belco contracts. There was no evidence that Florida Industrial had received payment from any of these customers by a check payable to Belco. In any event a course of dealings is necessary to establish apparent authority. Isolated or occasional transactions are not enough. 2 C.J.S. Agency § 112, a(1), p. 1301.

Neubauer, a witness for the Bank, was asked whether anyone in Belco knew that he was receiving checks payable to Belco, indorsing them and depositing them in the account of Florida Industrial. He replied that he had never notified anyone. On further questioning he said that officers of Belco knew that he had received checks on the McCann "jobs which were—which remittances were going direct to Belco under the same clause of the contract. That is the only specific instance I can recall." The McCann transaction, as has been noticed, occurred before the open account handling was discontinued and the obligation of McCann was to Florida Industrial. If it was discharged by a check to Belco the proceeds would nevertheless have belonged to Florida Industrial and its receipt of them would be something of which Belco could not complain. The Bank stresses the indorsement of a check of Miami Station to buttress its position. Vincent A. Pisani, a representative of Belco from its headquarters, was in Miami. A check from Miami Station drawn on a Miami Beach bank and payable to Belco was received by Neubauer and Pisani. Miami Station was in financial trouble and it was believed by Belco's Vice President and General Manager who was called by Pisani that the check might not be good if presentment of it was delayed. An officer of the Coconut Grove Bank arranged with the Miami Beach Bank to issue its cashier's check payable to Belco and this was done with Neubauer affixing a rubber stamp indorsement of Belco's name on the check. With respect to this item it appears that there was implied authority and probably express authority to indorse for the purpose of procuring a cashier's check to the same payee. If any inference of apparent authority could be drawn from this incident it would go no farther than to allow Neubauer to indorse to procure cashier's checks payable to Belco, and had Neubauer gone no farther this litigation would have been unnecessary.

It is significant that there is no finding of fact that Belco knew, prior to the discovery of the indorsements giving rise to this suit, that Florida Industrial or Neubauer had indorsed and deposited any checks payable to Belco. We think the evidence would not have justified any such finding. In the absence of such proof we reach the conclusion that there was no substantial evidence to sustain the findings, conclusions and judgment of the district court. No circumstance is here disclosed such as would relieve the Coconut Grove Bank from the risk of loss that is generally cast upon one who presumes to deal with an agent acting beyond the scope of his authority.

The undisputed evidence and the court's findings of fact show that the Bank credited Florida Industrial with checks payable to but not indorsed by Belco, for which Belco has not been reimbursed, in the amount of $7,143.84. The judgment of the district court is reversed and judgment is here rendered for $7,143.84 in favor of the appellant, Bogue Electric Manufacturing Company.

Reversed and rendered.