128 So.2d 761 (1961)
Richard James SAUER, Appellant,
v.
Helen Gladys SAUER, Hertz Corporation, a Delaware corporation, and Joan Sauer, a single woman, Appellees.
No. 1944.
District Court of Appeal of Florida. Second District.
March 31, 1961.
Rehearing Denied April 25, 1961.
James J. Linus, McCune, Hiaasen, Crum & Ferris, Fort Lauderdale, for appellant.
Alvah H. Frier, Jr., Fleming, O'Bryan & Fleming, Fort Lauderdale, for appellees.
ALLEN, Chief Judge.
The appellee, Joan Sauer, as plaintiff in the lower court filed an action for compensatory *762 and punitive damages against the Hertz Corporation, as owner-bailor of the vehicle in question; against the appellant, Richard James Sauer, as bailee of the vehicle; and against Helen Gladys Sauer, the sister of appellant and as the driver of the vehicle. The complaint alleged that Helen Gladys Sauer, while operating the vehicle in a wilful and wanton and negligent manner, struck the plaintiff, Joan Sauer, and as a result the plaintiff was severely injured. Trial by jury resulted in a verdict of $500 punitive damages against Helen Gladys Sauer; a verdict of $4,500 compensatory damages against all of the defendants; and a verdict of $10,000 punitive damages against the defendant, Richard James Sauer. Final judgments were entered on the above verdicts by the court along with an order taxing costs of $280.30 against all of the defendants. The court then denied the defendant, Richard James Sauer's motion for judgment in accordance with a prior motion for a directed verdict and this appeal was taken only by Richard James Sauer from the final judgment.
The award of punitive damages against the defendant, Richard James Sauer, is the main point presented by this appeal. The character or degree of negligence necessary to sustain an award of punitive damages must be of a gross and flagrant character, evincing reckless disregard of human life, or of the safety of persons exposed to its dangerous effects, or there is that entire want of care which would raise the presumption of a conscious indifference to consequences, or which shows wantonness or recklessness, or a grossly careless disregard of the safety, welfare, and rights of others which is equivalent to an intentional violation of them. Carraway v. Revell, Fla. 1959, 116 So.2d 16. The court in the Revell case also noted that the character of negligence necessary to sustain a conviction for manslaughter is the same as required to sustain a recovery for punitive damages with the distinction of course being the degree of proof.
Exemplary or punitive damages are allowed and awarded as a punishment to the defendant and as a warning and example to deter him and others from committing similar offenses in the future. Under this theory, such damages are allowed not as compensatory damages, but rather in addition to such damages, Florida East Coast R. Co. v. McRoberts, 111 Fla. 278, 149 So. 631, 94 A.L.R. 376, when the acts complained of have been committed with malice, moral turpitude, wantonness, outrageous aggravation, or with reckless indifference for the rights and safety of life and limb of others. Glickstein v. Setzer, Fla. 1955, 78 So.2d 374.
The foregoing principles present a standard by which we must compare the conduct of defendant in the instant case.
The plaintiff, Joan Sauer, and the defendant, Richard James Sauer, had previously been married to each other and had lived together four months. A son, Joseph Sauer, was born after the separation of the parties but both parties continued to live in Pittsburg, Pennsylvania. In June, 1959, the plaintiff moved to Fort Lauderdale and subsequently moved in with her sister, Mrs. Lawley, in Pompano Beach, where she and her child continued to live until the time of this altercation.
The defendant and his sister rented an automobile from the defendant, Hertz Corporation, upon arriving at Miami Airport. They traveled to Fort Lauderdale that afternoon trying to locate the address of plaintiff's sister with whom the plaintiff and her child were reportedly staying. After failing to find the plaintiff's sister's name in the Fort Lauderdale telephone directory, the defendant and his sister proceeded to Pompano Beach and located the plaintiff's sister's house sometime around 9:00 p.m. They drove back and forth in front of the house and then rented space in a motel for the night. The next morning, *763 without pausing for breakfast, the defendant and his sister put their belongings back into their automobile and proceeded to plaintiff's sister's house. As they approached they observed plaintiff's sister, Mrs. Lawley, and her children, along with plaintiff and her child, get into an automobile and drive away.
The defendant followed a sufficient distance behind so as to not be observed until they arrived at a shopping center. The plaintiff and her party went into a store still without knowledge that they were being followed. The defendant went into the store and picked up the child while plaintiff was examining some merchandise and defendant shouted: "Now I have got him, ha, ha, ha." The defendant then ran out of the store with the child and the plaintiff and her party were in hot pursuit. Upon arriving where defendant's automobile was parked, he fell and let go of the child.
The plaintiff attempted to retrieve her child but defendant's sister grabbed plaintiff preventing her from picking up the child. From this point on there was naturally considerable confusion and some of the testimony given is partially conflicting but in essence the following occurred. After defendant's sister grabbed plaintiff, the defendant told his sister to take the child and to get into the automobile. She did. The defendant restrained plaintiff so she could not interfere. By this time defendant's 17 year old sister was in the car with the child and had rolled the windows up and locked the doors.
The defendant then let go of plaintiff and she began pounding on the driver's window shouting, "Please give me my baby back." The defendant's sister looked in the direction of her brother, the defendant, and he said: "Hit her; hit her." The defendant's sister started the engine, cut the wheels to the right and backed the automobile up suddenly and in so doing plaintiff was thrown up on the left front fender of the automobile. Various witnesses testified that the automobile was backed out of the parking space fast, very fast, suddenly, very rapidly, etc.
The plaintiff slid from the fender and the swerving impact of the left front portion of the automobile tore her clothing and under-garments from her body and a large, deep laceration was opened in her lower abdomen. Despite her condition, the plaintiff again took hold of the automobile trying to hold herself upright. The plaintiff's sister, Mrs. Lawley, shouted to the driver, "You hit her."
The engine stalled but was started again and the defendant told his sister to "Keep going, keep going." The defendant's sister then drove away with the child in the automobile. The plaintiff was given some clothing with which to cover herself and was taken to the hospital where surgery was performed in order to close her lacerated abdomen.
The defendant was approximately 35 years old and his sister was 17 years old at the time plaintiff was injured. After a careful review of the record, it is manifest that the sister at all times was acting as directed and instructed to act by the defendant. We are thus confronted with an adult bailee of an automobile standing by and directing a seventeen year old female driver in the operation of the automobile in such a manner as has been previously described in detail. Since the bailor is not a party to this appeal nor were punitive damages assessed against the bailor, we are concerned only with the punitive damage liability of the bailee. Accordingly, for purposes of resolving this issue the bailee's liability will be the same as if he were the owner under the facts of this case for the bailee allowed another to use a dangerous instrumentality and, being in a position to allow or forbid  being in control  should be responsible accordingly.
The leading cases of Anderson v. Southern Cotton Oil Co., 73 Fla. 432, 74 So. 975, *764 L.R.A. 1917E, 715, and Southern Cotton Oil Co. v. Anderson, 80 Fla. 441, 86 So. 629, 16 A.L.R. 255, established the rule that the automobile in operation is a dangerous instrumentality and he who allows another to set that instrumentality in motion will be responsible for resultant injuries negligently inflicted. During the twenty years following the Southern Cotton Oil Co. cases certain qualifications and limitations were applied in the decisions but in Lynch v. Walker, 1947, 159 Fla. 188, 31 So.2d 268, the court adhered to the Southern Cotton Oil Company cases and overruled the intervening conflicting decisions. The court then stated the holding by quoting from the original Southern Cotton Oil Company case [80 Fla. 441, 86 So. 638]:
"* * * [T]hat one who authorizes and permits an instrumentality that is peculiarly dangerous in its operation to be used by another on the public highway is liable in damages for injuries to third persons caused by the negligent operation of such instrumentality on the highway by one so authorized by the owner."
It would therefore appear that the rule which is applicable to the instant case is not essentially based on respondeat superior nor on agency conceptions but on the practical fact that the bailee of a means of death and destruction should in justice answer for misuse of the vehicle by anyone operating it with his knowledge and consent. See Alpert, Florida Automobile Accident Law, secs. 65-67. In Frankel v. Fleming, Fla. 1954, 69 So.2d 887, 888, Frankel was staying at a hotel with a lady not his wife, though registered as such, and had requested the hotel to obtain for him a "U-Drive-It" car. The car, at the time of the accident injuring plaintiff, was being driven by the lady, but Frankel was not present. The plaintiff sued both the car rental concern and the bailee in separate suits. Both were held liable. In regard to the liability of the bailee, Frankel, the Court stated:
"We think the answer to the question may be found in Wilson v. Burke, Fla., 53 So.2d 319, where we held that an ostensible lessee, a corporation, was responsible for damage caused by the truck it was operating. Proof of actual ownership of the vehicle causing injury is not indispensable to recovery, for the misfortune of the injured person should not depend entirely on the repository of the legal title; nor is recovery dependent upon perfection of title in a given person, Rutherford v. Allen Parker Co., Fla., 67 So.2d 763, construing Section 319.22(2), Florida Statutes 1951, and F.S.A.
"Having held a lessee liable in the cited case, Wilson v. Burke, supra, we find no difficulty in now holding the appellant, a bailee, responsible in the instant case for injury caused by the one to whom he entrusted the car, especially where, to all intents and purposes, as will be seen by referring to the opinion in Fleming v. Alter [Fla., 69 So.2d 185], supra, that person was the bailee's spouse."
The defendant bailee in the instant case therefore being liable for negligent operation of the vehicle by the minor sister, does a wilful, wanton and malicious injury inflicted by the driver impose punitive damages on the defendant bailee? Again, we must emphasize the peculiar nature of the facts of this case. The defendant brought his 17 year old sister on this nefarious excursion into Florida. The defendant directed the minor sister to grab the child and get into the car. She did. The defendant shouted to the minor sister to hit the plaintiff. The sister reversed the car in such a manner as to injure the plaintiff. The defendant directed the minor sister to "Keep going" after inflicting the injury to plaintiff. *765 The sister drove away with plaintiff's child.
The evidence presents a situation wherein a bailee places a dangerous instrumentality in the hands of his minor sister and, while controlling the actions of the minor driver, causes such driver to operate the vehicle in such a manner as to strike and severely injure the plaintiff-mother. We must conclude that the defendant and his sister demonstrated a reckless disregard of the safety of others equivalent to an intentional violation of the rights of others. Such conduct is a proper predicate for an award of punitive damages. There is some conflict in the evidence but the issue of damages was submitted to the jury along with appropriate instructions explaining the nature and purpose of punitive damages. The jury having reconciled this matter and no error having been made to appear, the judgment on the verdict must be affirmed.
Affirmed.
KANNER and SHANNON, JJ., concur.