This shall be considered an order; settlement thereof is unnecessary.

**UNITED STATES of America,
Plaintiff,**

v.

**Samuel J. MARROSO, Defendant.
Crim. No. 41410.**

United States District Court
E. D. Michigan, S. D.

Feb. 2, 1966.

Lawrence Gubow, U. S. Atty., William H. Merrill, Chief Asst. U. S. Atty., Detroit, Mich., for plaintiff.

Philip A. Gillis, Detroit, Mich., for defendant.

KAESS, District Judge.

A federal grand jury indictment charges that Samuel J. Marroso "while engaged in negotiations on behalf of Central States, Southeast and Southwest Areas Pension Fund with Leonard Ciaffone for a loan of $1,076,000.00 from the said Central States, Southeast and Southwest Areas Pension Fund, did cause the said Leonard Ciaffone to make and did knowingly receive a payment of $25,000.00 as a kickback for the granting of said loan and because of his activities with respect to the negotiation thereof; in violation of Sections 2 and 1954, Title 18, U.S.C."

Section 1954 of Title 18, U.S.C., provides, insofar as is relevant to this action, that

"(a) Whoever being—

(1) an administrator, officer, trustee, custodian, counsel, agent, or employee of any employee welfare benefit plan or employee pension benefit plan * * *

receives or agrees to receive or solicits any fee, kickback, commission, gift, loan, money, or thing of value because of or with intent to be influenced with respect to, any of his actions, decisions, or other duties relating to any question or matter concerning such plan or any person who directly or indirectly gives or offers, or promises to give or offer, any fee, kickback, commission, gift, loan, money, or thing of value prohibited by this section, shall be fined not more than $10,000 or imprisoned not more than three years, or both * * * *"

Section § 2(b) of Title 18 provides that:

"Whoever causes an act to be done, which if directly performed by him would be an offense against the United States, is also a principal and punishable as such."

Supplementary motions by defendant for dismissal of the indictment and suppression of evidence having been denied, a trial was held and a verdict of guilty was returned by the jury.

The case is presently before this court on the defendant's motions for a new trial, in arrest of judgment, and for judgment of acquittal.

Rule 29(a) of the Federal Rules of Criminal Procedure requires that a judgment of acquittal be entered if, after the evidence on either side is closed, the evidence is insufficient to sustain a conviction of the offense charged in the indictment.

The indictment, as aided by the Government's bill of particulars, charges, in essence, that defendant, while an agent of the Central States, Southeast and

Southwest Areas Pension Fund [1] knowingly received $25,000.00 as a kickback, in violation of Section 1954, and that defendant, in violation of Section 2, caused the payment to be made to him in violation of Section 1954.

Although it is difficult from the testimony of the various witnesses to ascertain all that took place or the exact chronology of events, substantially the following appears to have occurred. Mid City Development Company [2] was formed by Leonard Ciaffone to develop two parcels of land in the Detroit area. Vincent Leone, who had previously loaned Ciaffone $25,000.00 to purchase some of this property, knowing that Ciaffone was desirous of obtaining a substantial loan and having heard of Marroso as one who could arrange such loans, set up a meeting with Marroso at the home of Ciaffone. At this meeting the loan was discussed in general terms, but neither the amount of the loan nor its source were discussed. Marroso indicated that he would have to check with various people and that there would be a fee. Two weeks later another meeting was held at the home of Vincent Leone, at which time Marroso stated that a loan of $1,250,000.00 would be obtained from the Teamsters' Fund and that it would cost $100,000.00, $25,000.00 in cash, the balance by check. Thereafter several meetings were held. Marroso suggested to Ciaffone that he hire Irving Robinson to act as his attorney during the financing negotiations. Sometimes Ciaffone met only with Robinson. Sometimes Marroso was present. The loan application form was prepared by Ciaffone, and Marroso suggested that one or two changes be made in it. Robinson went to Chicago once with Marroso in connection with this loan, had some correspondence with the Pension Fund attorney and participated in the drafting of the commitment. Marroso discussed the application with Francis J. Murtha, Ex-

ecutive Secretary of the Fund, on several occasions. On August 8, 1962, the Pension Fund issued its commitment to Mid City for $1,076,000.00. Based on this commitment Ciaffone obtained interim financing from another source. Shortly after receiving the commitment, there was a meeting in Robinson's office, at which Marroso was told that he would get his fee only if the full loan was obtained and he said that he would get it increased. However, as certain requirements of the Fund were not met, the commitment was not increased. The $1,076,000.00 loan from the Fund was actually received in August of 1964. Thereafter 2 or 3 meetings were held regarding Marroso's fee, which was eventually reduced to $35,000 because the full amount of the loan was not obtained. Vincent Leone received $15,000.00 from Ciaffone, obtained another $10,000.00 and gave it all to Joseph Leone, who in turn gave it to Marroso.

There was ample evidence to establish that the Fund is an "employee pension benefit plan" within the meaning of Section 1954; that Ciaffone, on behalf of Mid City, entered into negotiations to obtain a loan of $1,250,000.00 from the Fund to Mid City; that defendant indicated that he could, for a fee, get Mid City the loan from the Fund; that defendant participated in the preparation of the application, and attempted to influence the granting of the loan; that a loan of $1,076,000.00 was made by the Fund to Mid City; that defendant demanded a fee of $100,000.00; and that defendant actually received $25,000.00.

It is the contention of defendant, however, that the above actions do not come within the purview of either Section 1954 or the indictment as aided by the bill of particulars, because there is no evidence that he received the money while acting as an agent of the Fund. The Government, on the other hand, while

1. This fund, for the benefit of members of the International Brotherhood of Teamsters, is hereafter referred to simply as "the Fund", "the Pension Fund", or "the Teamsters' Fund."

2. Hereafter referred to as "Mid City".

conceding that defendant was not an officially designated agent of the Fund, argues that defendant was acting on behalf of the Fund in soliciting this loan application, thereby becoming its "de facto" agent.

The only person who testified directly as to whether defendant was an agent was Francis J. Murtha, Executive Secretary of the Fund. He stated that Marroso was not an employee or a representative of the Fund in any manner. Joseph Leone, who is the brother of Vincent Leone and the one who actually handed the $25,000.00 to Marroso, testified that he thought defendant's conduct was "unethical". However, he did not testify that he thought that defendant was representing the Pension Fund. Four witnesses testified as to their dealings with Marroso in relation to attempts to obtain loans.[3] However, their testimony does not in any way show that defendant acted as an agent of the fund. Two of the witnesses testified that they thought the fee requested or obtained was a legitimate "finder's fee".

■ Without express appointment and acceptance creation of an agency may be implied from the words and conduct of the parties and circumstances of the particular case. VanKoevering v. Manufacturers Life Insurance Co., 234 F.Supp. 786 (W.D.Mich.1964). How-

ever, a person may not merely by his own words or conduct make himself another's agent. The fact that one assists another or does something for his benefit does not constitute such person an agent of the other. See, Restatement (Second), Agency § 225, comment c (1958). There must be a manifestation of consent by the one for whom the service is rendered. Appleby v. Kewanee Oil Co., 279 F.2d 334 (10th Cir. 1960); Kelly v. United States Steel Corp., 170 F.Supp. 649 (W.D.Pa.1959); Restatement (Second), Agency § 221 (1958).

■ There is nothing in the testimony which supports a conclusion that defendant was acting in behalf of the Pension Fund or, if he was, that any officials of the Fund knew of or consented to such actions.

The evidence seized from defendant's home,[4] while it substantiates some of the testimony, adds nothing to this aspect of the Government's case.

Although it appears that defendant had a reputation as having "connections" with the Teamsters and that he often represented that he was intimate friends with and able to influence important Pension Fund officials, there is no evidence that he acted as an agent of the Fund. "Name dropping" and boasting about one's "connections" and "influence" with another person does not con-

---

3. Mr. Kane testified that defendant was introduced to him in relation to a prospective loan, as being "connected with the Teamsters" and as one who could arrange a loan; and that, as Kane could not raise the points necessary to obtain a loan, nothing came of the meeting.

Mr. Simon testified that he was directed to a Mr. Palumbo in an effort to obtain financing for a real estate development; that the first time he met Marroso was talking to the contractor working on an adjoining subdivision; and that Marroso never talked to him about the loan application.

Mr. Aaron testified that he borrowed $100,000.00 from the Fund in December, 1964; that the first time he met defendant was in Palumbo's office; that defendant told him that it would cost $12,000.00 for a loan; and that, taking it

to be a "finder's fee", he began to make payments to Marroso.

Mr. Abrams testified that he was trying to finance a motel; that he was offered a Teamster loan through Palumbo; that Palumbo introduced Marroso as one who could get it for him; that Marroso said the loan would cost 10 points; that Marroso mentioned both Murtha and Hoffa; and that if he had paid the points, he would have done it by check as he considered it a legitimate "finder's fee".

4. Exhibit 1, blank application forms for a Pension Fund loan, Exhibit 2, a carbon copy of a letter from Marroso to Robinson, and Marroso's daily diary for 1963, 1964 and 1965, the contents of which were testified to by the FBI Agent Norman Simons, were all seized under a search warrant from Marroso's home, along with other material not used as evidence.

stitute one the agent of the other. Similarly, the fact that the initials J. R. appear throughout defendant's daily diary and that they stand for James R. Hoffa, who is the General President of the International Brotherhood of Teamsters, proves no more than that defendant did know Hoffa and did contact him frequently. It does not prove that defendant was an agent for the Fund, of which Hoffa is one of sixteen members of the Board of Directors.

██ Generally the question of whether an agency relationship exists is a question of fact to be resolved by the jury. American Can Co. v. Horlamus Corp., 341 F.2d 730 (5th Cir. 1965); Seaboard Properties, Inc. v. Bunchman, 278 F.2d 679 (5th Cir. 1960). However, viewing the evidence in the light most favorable to the Government and drawing all permissible inferences from the testimony to support the Government's theory, this court concludes that there was not sufficient evidence upon which the jury could find that defendant was an agent of the Fund.

Defendant must be shown to be within the class of individuals to whom Section 1954 applies before he can be guilty of violating the section. The Government by the indictment and bill of particulars is limited to proving that defendant received the payment while an agent of the Pension Fund. This it has failed to do.

██ The second theory upon which the Government presented its case, that defendant "caused" Ciaffone to make a payment in violation of Section 1954, must fail for the same reason. A payment is not in violation of Section 1954 unless it is a payment "prohibited by this Act", and what is prohibited by the Act is that an "administrator, officer, trustee, custodian, counsel, agent, or employee of any employee welfare benefit plan or employee pension benefit plan" * * * "receives or agrees to receive or solicits any fee, kickback, commission, gift, loan, money, or thing of value." Thus, as Marroso, the person who received Ciaffone's payment, was not an

"officer, trustee, custodian, counsel, agent, or employee" of the Fund, Ciaffone did not violate Section 1954 and defendant did not "cause" a violation of United States laws under Section 2 of Title 18, United States Code.

Therefore, as the United States has failed to present sufficient evidence that Marroso was an agent of the Pension Fund, the evidence is insufficient to sustain a conviction of the offenses charged in the indictment and defendant's motion for acquittal must be granted.

The defendant's motion in arrest of judgment is based on the ground that the indictment fails to state an offense under the United States laws, because it does not charge defendant with being "an administrator, officer, trustee, custodian, counsel, agent, or employee" as required by the statute and that merely to be "engaged in negotiations in behalf of", as the indictment charges, does not come within the meaning of the statute. Defendant further contends that if the statute were construed to include the charge made in the indictment, the statute is unconstitutional as being too vague and indefinite.

In view of the fact that the court has found that there is insufficient evidence to sustain the charge as made in the indictment, it is unnecessary to either construe the statute or pass upon its constitutionality. However, it seems appropriate for the court to point out that to construe the statute to cover this indictment would place many persons who perform the legitimate function of "finder" and act as intermediary between persons or organizations desiring financing and persons or organizations desiring to lend money, in the precarious position where they must, at the risk of being found guilty of a crime, determine whether their actions might be sufficiently "on behalf of" an employee benefit fund to constitute a violation of the section. A statute forbidding or requiring the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application is repugnant to the due

process clause. Winters v. People of State of New York, 333 U.S. 507, 68 S. Ct. 665, 92 L.Ed. 840 (1948); Connally v. General Construction Co., 269 U.S. 385, 391, 46 S.Ct. 126, 70 L.Ed. 322 (1926).

In view of the disposition of the motion for acquittal, it is also unnecessary to pass upon the motion for a new trial.

It is ordered, therefore, that defendant's motion for acquittal is granted.