**Eric Van EBERHARDY, Plaintiff,**

v.

**GENERAL MOTORS CORPORATION, a Foreign Corporation, and Royal Globe Insurance Company, a Foreign Corporation, Defendants.**

**No. 74–214 Civ–J–S.**

United States District Court,
M. D. Florida,
Jacksonville Division.

Aug. 29, 1975.

**828.**

Ellis E. Neder, Jr., Jacksonville, Fla., for plaintiff.

Ronald L. Palmer, Mathews, Osborne & Ehrlich, Jacksonville, Fla., for defendants.

## OPINION

CHARLES R. SCOTT, District Judge.

Diversity jurisdiction of the court is properly invoked pursuant to 28 U.S.C. § 1332 (1970). Plaintiff is a resident of the State of Florida, claiming damages in excess of $20,000. Defendant is a Delaware corporation, with its principal place of business in Michigan; and its insurer, Globe Insurance Company, is an Illinois corporation.

The facts, undisputed after discovery, are the following: David Leggett is an employee of the Farm Equipment Company, a Georgia corporation located in Hazlehurst, Georgia. Leggett works as a body mechanic in the body shop. Farm Equipment Company sells and services automobiles and other vehicles, in conjunction with which it has a franchise contract with General Motors Corporation, to sell Buick autmobiles and products.

General Motors Corporation operates a training center in Jacksonville, Florida, which is available to employees of dealers and other businesses that sell and service General Motors products. There is no charge by General Motors, which sends out monthly schedules of classes offered as well as enrollment forms. The only expenses incurred are either by an employee himself, or by his employer, to pay for his transportation, meals, accommodations, and regular salary during the period that the training classes are offered. None of those costs are paid by General Motors, however.

In April, 1970, the president and owner of Farm Equipment Company enrolled David Leggett in a two-day course in Advanced Refinishing Techniques, commencing on Monday, April 13, 1970. Generally, Farm Equipment provides a car for its employees to drive to the training center classes. On this occasion, however, Leggett explained that he wanted to drive his father-in-law's 1968 Buick Skylark instead. Leggett's father-in-law is Edward Fourtnoy Minton. Minton had encountered a sound of wind in the car, and Leggett had not been able to correct it. Minton agreed to let Leggett drive the car to the General Motors training center, to try to get it corrected. In addition, there is uncontroverted evidence that Leggett wanted to drive his father-in-law's car because it was new and Leggett wanted to "give it a shoot off to Jacksonville."

Early Monday morning, April 13, 1970, Leggett drove the car from Hazlehurst to Jacksonville for the beginning of the classes, and arrived a few minutes early. He talked with an instructor about the car. The instructor walked over to the car, looked inside and discovered a small hole near a vent, and filled it with putty to seal it. The instructor knew what to look for from previous, similar experiences. The car was not driven at any time. After that Leggett attended the first day's class sessions, leaving the car parked until the close of class that day. There was no charge for the repair.

When he got out of school that day, Leggett drove to the motel where he was staying to clean up. Then he decided to go get supper. While en route to supper, Leggett struck plaintiff, Eric Van Eberhardy, injuring him and damaging his motorcycle that he was riding at the time.

■■■■ Defendant has moved for summary judgment, to which it is entitled

only if it meets its burden of showing (1) the absence of any genuine issues of material fact, and (2) the right to summary judgment as a matter of law. Fed.R.Civ.P. 56; *Adickes v. S. H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L. Ed.2d 142 (1968); *Poller v. CBS, Inc.,* 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962). It is, however, the court which decides whether that burden has been met, and not the movant or the opponent of the summary judgment motion. *De-Bardeleben v. Cummings,* 453 F.2d 320, 324 (5th Cir. 1972). Thus, although under Florida law the facts must be viewed most favorably for the opponent of the summary judgment motion. *Anderson v. Morgan,* 172 So.2d 845 (Fla. App.3rd, 1965); *Crepaldi v. Wagner,* 132 So.2d 222, 226 (Fla.App.1st, 1961), nevertheless, the ultimate question of whether the standard for summary judgment is met—whether the facts present any genuine, material issues or generate any conflicting, material inferences; and whether the movant is entitled to summary judgment as a matter of law— is determined by the court on the basis of federal law. *Lighting Fixture & Elec. Supply Co. v. Continental Ins. Co.,* 420 F.2d 1211, 1213 (5th Cir. 1969).

▪ Summary judgment was not designed to preclude litigants from trying real issues, if they exist, *United States v. Burket,* 402 F.2d 426, 430 (5th Cir. 1968); but it is available as "a valuable tool in the law's effort to stem the tide of flooding litigation," *DeBardeleben v. Cummings,* 453 F.2d at 326 (5th Cir. 1972), for promptly disposing of illusory issues and actions, thereby avoiding unnecessary trials. *Carantzas v. Iowa Mutual Ins. Co.,* 253 F.2d 193, 195 (5th Cir. 1956); *Board of Public Instruction for County of Hernando, Fla. v. Meredith,* 119 F.2d 712, 713 (5th Cir. 1941); *Sexton v. American News Co.,* 133 F.Supp. 591, 593 (N.D.Fla.1955).

The sole question before the Court is whether at the time of Leggett's collision with plaintiff there was any kind of agency-like relationship between Leg-

gett and General Motors. If there were, then General Motors might be vicariously liable if Leggett were both negligent and within the scope of his authorized conduct. If not, however, then there is no vicarious liability and the questions of negligence and scope of authority do not arise. Plaintiff contends that there was such a relationship.

▪▪ Plaintiff argues two theories. Both theories are variants of the view that because some sort of agency-like relationship existed between General Motors and Leggett, General Motors is responsible for Leggett's negligence. Under Florida law, an automobile is a dangerous instrumentality when operated. *Carr v. American Universal Ins. Co.,* 341 F.2d 220, 223 (6th Cir. 1965); *MacCurdy v. United States,* 143 F.Supp. 60, 64–65 (N.D.Fla.1956); *Lynch v. Walker,* 159 Fla. 188, 31 So.2d 268 (1947); *Southern Cotton Oil Co. v. Anderson,* 80 Fla. 441, 86 So. 629 (1920); *Reid v. Associated Engineering of Osceola, Inc.,* 295 So.2d 125, 128 (Fla.App.4th, 1974); *Ray v. Earl,* 277 So.2d 73, 75 (Fla.App. 2d, 1973), and all those persons in control of the car will be responsible for injuries resulting from the negligent use of it. The test for responsibility, in Florida, looks past mere appearances and nominal relationships, to the realities of all who genuinely had possession, dominion and control over the car at the time that its negligent operation caused damage. *Frankel v. Fleming,* 69 So.2d 887, 888 (Fla.1954); *Wilson v. Burke,* 53 So.2d 319 (Fla.1951); *Wolfe v. City of Miami,* 103 Fla. 774, 134 So. 539, 541 (1931); *Earl v. Ray,* 277 So.2d 73, 76–77 (Fla.App.2d, 1973); *Sauer v. Sauer,* 128 So.2d 761, 763 (Fla.App.2d, 1961); *Martin v. Lloyd Motor Co.,* 119 So.2d 413, 415 (Fla.App.1st, 1960); *Re-Mark Chemical Co. v. Ross,* 101 So.2d 163, 165 (Fla.App.4th, 1958).

▪ First, plaintiff argues bailment. Bailment of an automobile will create a binding relationship of responsibility between bailor and bailee, extending even

to the knowing, consensual use of third persons, where there might not otherwise be any scope of authority. *Rouse v. Greyhound Rent-a-Car, Inc.*, 506 F.2d 410, 413 (5th Cir. 1975), *rev'g* 369 F. Supp. 1072, 1076 (M.D.Fla.1973); *Frankel v. Fleming*, 69 So.2d 887, 888 (Fla. 1954); *Ray v. Earl, supra; Sauer v. Sauer, supra; Martin v. Lloyd Motor Co., supra.* Liability is terminated upon return of the car or by a conversion that usurps the control, consent, and responsibility of all superiors.

■ Plaintiff's bailment contention is plainly misconceived. The only discernible bailment of the 1968 Buick was between Leggett as bailee, and his father-in-law, Minton, as bailor. Even if, however, another bailment were contrived between Leggett and General Motors, by Leggett parking the car at the training center, by the instructor repairing the hole, and by Leggett leaving the car parked there during class all day, nonetheless, when Leggett returned from class and drove the car away to the motel, any putative bailment between Leggett and General Motors ceased; and with it was terminated any conjectural liability of General Motors. The car was in Leggett's possession and control as bailee from Minton, not as a permitted third person. Minton did not bail the car to General Motors, but to Leggett. Assuming arguendo a bailment between Leggett and General Motors, return of the car to Leggett's possession would be to the bailor, not a third person. Every case cited by plaintiff concerning bailment was one in which the bailment was still in effect at the time of the incident for which liability was imputed and is therefore irrelevant to the instant case.

■ Plaintiff's second theory is an employment relationship. It is past question that a principal is bound by the acts of his agents, so long as they act within the scope of their authority, real or apparent, express or implied. *Stuyvesant Corp. v. Stahl*, 62 So.2d 18, 20 (Fla.1952). Consequently, an employer will be liable for the acts of his employees so long as their acts are within the course of employment. Slight deviations will not alter the course of the employer's business or defeat his responsibility. Marked departures from the employment duties, however, will constitute an abandonment that forecloses any liability on the part of an employer. *Western Union Telegraph Co. v. Michel*, 120 Fla. 511, 163 So. 86, 88, 89 (1935); *Wolfe v. City of Miami*, 103 Fla. 774, 134 So. 539, 541 (1931); *Thurston v. Morrison*, 141 So.2d 291, 294 (Fla.App. 2d, 1962). Further refinements of employment liability law in Florida have established that an employee whose work requires travel away from his employer's premises remains within the scope of his employment, except for nonessential personal errands. On purely private deviations, however, the scope of employment is suspended until the employee returns to the point of departure. *N. & L. Auto Parts Co. v. Doman*, 11 So.2d 270, 271–72 (Fla.App.1st, 1959). Moreover, an employee who has no principal place of business other than his own home is considered on his employer's business while travelling to and from his home. On the other hand, an employee who has a principal place of business other than his home is not within the scope of his employment when merely going to and from work in his own car. *Merwin v. Kellems*, 78 So. 2d 865 (Fla.1955); *Foremost Dairies, Inc. v. Godwin*, 158 Fla. 245, 26 So.2d 773 (1946); *Weiss v. Culpepper*, 281 So.2d 372, 373 (Fla.App.3d, 1973); *Southern Life & Health Ins. Co. v. Smith*, 218 So.2d 784, 786 (Fla.App.1st, 1969).

■ In the instant case, however, it is undisputed that Leggett was never an employee of General Motors. The evidence, unvaried, is that Leggett was under no obligation at all to General Motors, but was obliged only to his employer, Farm Equipment Co. Consequently, even if Leggett negligently operated a dangerous instrumentality in the course of transacting business on behalf of his

employer, General Motors remains unaffected. Farm Equipment Co. was Leggett's employer; and Farm Equipment Co. sent Leggett to improve his car-painting skills, not General Motors. Employment by Farm Equipment Co. does not constitute employment by General Motors. Farm Equipment Co. is a Georgia corporation, and General Motors is a Delaware corporation. Farm Equipment is not a subsidiary or outlet of General Motors, but an independent business. General Motors only interest in Farm Equipment Co. is to the extent that Farm Equipment Co. sells products of General Motors by virtue of a franchise contract. Every case cited by plaintiff was one in which the principal's liability was imputed because he was in fact the employer of the person whose negligence caused the damage.

■■■■■ It is long-settled law in Florida, and throughout the federal circuit courts of appeals, that a party who asserts and relies on an agency relationship has the burden of proving its existence, as well as its scope. *Florida Towing Corp. v. Oliver J. Olson & Co.*, 426 F.2d 896, 901 n.10 (5th Cir. 1970); *Bogue Elec. Mfg. Co. v. Coconut Grove Bank*, 269 F.2d 1, 4 (5th Cir. 1959); *Zukoski v. Baltimore & Ohio R. Co.*, 315 F.2d 622, 625 (3d Cir. 1963); *Atchison, Topeka & Santa Fe Ry. Co. v. Bouziden*, 307 F.2d 230, 233 (10th Cir. 1962); *Gosney v. Metropolitan Life Ins. Co.*, 114 F.2d 649, 653 (8th Cir. 1940); *Ferro Concrete Const. Co. v. United States*, 112 F.2d 488, 491 (1st Cir. 1940); *Troietto v. G. H. Hammond Co.*, 110 F.2d 135, 137 (6th Cir. 1940); *Collins v. Streitz*, 95 F.2d 430, 436 (9th Cir. 1938). Ordinarily the existence of an agency relationship is a question of fact to be resolved by the factfinder. *Seaboard Properties, Inc. v. Bunchman*, 278 F.2d 679, 681 (5th Cir. 1960); *Bogue Elec. Mfg. Co. v. Coconut Grove Bank, supra; Mitchell v. Union Pacific R. Co.*

242 F.2d 598, 603 (9th Cir. 1957); *United States v. Marroso*, 250 F.Supp. 27, 31 (E.D.Mich.1966); *McCabe v. Howard*, 281 So.2d 362, 363 (Fla.App.2d, 1973); *Amerven, Inc. v. Abbadie*, 238 So.2d 321, 322 (Fla.App.3d, 1970); *Financial Fire & Cas. Co. v. Southmost Veg. Coop. Ass'n.*, 212 So.2d 69, 71 (Fla. App.3d, 1968); *Gammage v. Turner*, 206 So.2d 252, 255 (Fla.App.2d, 1968); *Shaffram v. Holness*, 102 So.2d 35, 41 (Fla. App.2d 1958). When, however, a party bearing the burden of proof on an issue, fails to produce any supportive evidence, or when (as here) all of the evidence presented by both parties is so univocal that reasonable persons could reach but one conclusion, a question that is ordinarily one of fact becomes a question of law, to be determined by the court. *Rossano v. Blue Plate Foods, Inc.*, 314 F.2d 174, 180 (5th Cir. 1963); *Kuykendall v. United Gas Pipeline Co.*, 208 F.2d 921, 924 (5th Cir. 1953); *DeBord v. Proctor & Gamble Distributing Co.*, 146 F.2d 54, 55–57 (5th Cir. 1944), *aff'g* 58 F.Supp. 157, 158 (N.D. Ga.1943); *Gaither v. Myers*, 131 U.S. App.D.C. 216, 404 F.2d 216, 219 (D.C. Cir. 1968); *Cramer v. Hoffman*, 390 F.2d 19, 23 (2d Cir. 1968); *Burriss v. Texaco, Inc.*, 361 F.2d 169, 172, 174 (4th Cir. 1966); *Smith v. Lauritzen*, 356 F.2d 171, 176 (3d Cir. 1966); *Knight v. Cameron Joyce and Co.*, 252 F.2d 103, 107 (8th Cir. 1958); *Perlick v. Vick*, 246 F.2d 144, 147 (4th Cir. 1957); *Mid-Continent Pipe Line Co. v. Whitley*, 116 F.2d 871, 875 (10th Cir. 1940); *Blythe v. Tarko*, 188 F.Supp. 83, 85, 86 (N.D.W.Va.1960); *Kuerner v. NCR Co.*, 43 F.Supp. 62, 63 (W.D.Ky. 1942); *Amerven, Inc. v. Abbadie, supra; Shaffram v. Holness, supra.* There is not an iota of evidence to show a bailment, or any other relationship of agency, between General Motors and Leggett. Therefore, defendant's motion for summary judgment is properly granted, and it is so ordered.