CAROLYN WOLFE, *Plaintiff in Error,* vs. CITY OF MIAMI, a municipal corporation, *Defendant in Error.*

134 So. 539.

137 So. 892.

Division B.

Opinion filed May 12, 1931.

Petition for rehearing granted June 29, 1931.

Opinion filed December 1, 1931.

*A. B. & C. C. Small* and *Wallace Ruff* and *Robert J. Boone*, of Miami, for Plaintiff in Error;

*J. W. Watson, Jr., Mitchell D. Price, Charles W. Zaring* and *Jack R. Kirchick*, of Miami, and *Charles E. Davis*, of Tallahassee, for Defendant in Error.

DAVIS, J.—Plaintiff in error was plaintiff in the court below in a suit brought against the City of Miami for injuries inflicted on her in an automobile accident which occurred on November 30, 1926, at the intersection of Flagler Street and Miami Avenue.

The basis of the suit, as set forth in the declaration and substantiated by the testimony at the trial, is that the accident was occasioned by the negligence and careless-

ness of a negro convict, who at the time, was operating a motor vehicle belonging to one Max Lenhoff, a city convict foreman, but engaged on a mission for the city. The contention is that the city is liable because of the negligence and carelessness of its agent and servant the convict foreman as well as the convict who drove the car under the circumstances.

The evidence at the trial was sufficient to warrant a finding of negligence on the part of the convict operating the car. The only question at issue is whether the driver's negligence is attributable in law to the city under the circumstances of this case. The Court below held that it was not and directed a verdict for the defendant at the conclusion of the plaintiff's evidence. The principal assignment of error is based on this ruling.

The evidence shows that on the day of the alleged injury, Max Lenhoff, a convict foreman, was in charge of a squad of negro prisoners and that he had been directed by the City Jailer to engage in the work of cleaning up rubbish and debris which had been occasioned by a recent severe hurricane. In doing so, Lenhoff was acting under instruction from one Dr. Ziebold, Director of Public Welfare of the City of Miami, and Dr. Ziebold was in turn acting for the City Manager of Miami, under said City Manager's instructions, which he had authority to give.

Prior to the accident the foreman or guard, Lenhoff, had taken the force of prisoners from the city jail and was using them in cleaning up rubbish and debris, altho at the exact time of the accident it appears that this force was engaged in trying to launch a barge which had been damaged by the storm and driven ashore. The City contended at the trial that this barge was the private property of the Chief of Police of the municipality and that the employment of the city forces for the purpose of launching this craft was unauthorized and *ultra vires*. However, the exact work in which the convict force was engaged becomes

immaterial to the city's liability in view of the circumstances under which the injuries on the plaintiff were inflicted.

These circumstances were that, at the dinner hour, on the day in question, the convict foreman sent one of the negro laborers, a prisoner working on the city chain gang, into the city to bring back dinner for the other laborers. For the purpose of bringing back this food, the foreman entrusted to the negro convict, a Dodge car, which altho owned as the private property of the foreman, was nevertheless shown to have been used and employed by the foreman in the discharge of such foreman's work for the city and that this was done with the knowledge and acquiescence of the city which permitted the foreman to use its city automobile tag on said car and furnished gasoline, oil and repairs with which to operate said car about the city's business.

The messenger had driven into the city, obtained the food for which he was sent, and was on his way back to the place where the laborers were working, when he negligently and carelessly ran over the plaintiff. Food for the prisoners, which had been obtained with the authority of the city and for which the city no doubt later paid, was in the car at the time the accident occurred and such food was being taken to a place where the city prisoners were being kept under Lenhoff's official supervision and control, whether at a place, or engaged in such work, as they ought to have been or not.

It was error for the court to have directed a verdict for the city under the foregoing facts in evidence. In the latest declaration made by this court concerning the law applicable to liability for negligence on the part of owners or operators of motor vehicles, it was stated by Mr. Chief Justice Buford in the case of Herr v. Butler, decided the 12th day of March, 1931, reported in 132 So. 815, 101 Fla. 1125:

"An automobile operated upon the public highways being a dangerous machine, its owner is responsible for the manner in which it is used, and his liability extends to its use by anyone with his knowledge and consent."

It was further held by the Court in that case:

"One who casually entrusts his automobile to a stranger, even to operate it only for the stranger's own benefit, where the relationship is not specifically one of bailment, necessarily vests the person who obtains possession of the car, with authority to manage it, care for it, protect it and properly operate it to the end that such a car may be later safely returned to the owner in good condition."

In the case at bar the car was not *owned* in its technical sense by the City of Miami, but the evidence shows that it was being used by a city employee with the knowledge and consent of the city on the city's business. Repairs and fuel for the car were furnished by the city, and the car itself was actually operated, whether rightfully or not, by the employee under what is commonly known as a municipal "X" tag which exempted the car from a motor vehicle license tax on the theory that it was used for municipal purposes and therefore exempt from motor vehicle license taxation under the state law. All this was done with the knowledge, consent and acquiescence of the city of Miami and its officials having authority to act for it in the premises. It is inconceivable that this condition could have been otherwise than known to the officials under the circumstances.

Such automobile was therefore to all intents and purposes an automobile of the City of Miami which was entrusted by an authorized city employee to the negro convict who used it for the purpose of going after and obtaining food for the other convicts which the city was under a duty to feed, regardless of the nature of their work, and regardless of where the work was being done, whether on city property or private property at the time.

The city was therefore charged with the same liability

for negligence in the operation of such car under the circumstances as would have been chargeable to a private owner of such car who had sent the same convict on a similar mission for his own use and benefit.

The facts show conclusively that Max Lenhoff, the city convict foreman, was the authorized agent of the city for all matters relating to his duties to control and supervise the convict forces while in his charge, including procurement of meals for them. It is also shown that the city authorities permitted him to use his own automobile for city purposes under circumstances which in contemplation of law made the city the operator of the car while it was so engaged on city business. Such car was kept in repair by the city, its expenses of operation were paid by the city, and a city "exempt" license tag, which could only have been issued in the first instance to the proper officer of the city on the city's application, was on the car at the time of the accident, and had evidently been on said car a considerable time prior thereto so as to have been known to the city. The car was in the convict's charge only through the express order and direction of the foreman of convicts of the city, Max Lenhoff, who made the accident possible by giving such express order and direction to an irresponsible negro prisoner, who being already in jail himself, had little to fear from being guilty of a violation of the city traffic laws.

The least that can be said is that the case was one which should not have been taken from the jury, and consequently the judgment must be reversed for a new trial, at which the other errors complained of may not occur.

When different conclusions may fairly be drawn from the evidence as to whether the driver of an automobile was acting within the express or implied authority of the defendant who is alleged to have entrusted such driver with the automobile, at the time of the driver's alleged negligence causing the injury complained of, the evidence should

be submitted to the jury under appropriate instructions. Anderson v. Southern Cotton Oil Co., 73 Fla. 432, 74 So. 975.

Reversed and remanded for a new trial.

WHITFIELD, P.J., AND TERRELL, J., concur.

BUFORD, C.J., AND ELLIS AND BROWN, J.J., concur in the opinion and judgment.

---

ON REHEARING.

PER CURIAM.—The judgment in this case was reversed, and the cause remanded for a new trial (See Wolfe vs. Miami, 134 Sou. Rep. 539) after which a rehearing was granted and oral argument had before the entire court.

At the trial a verdict was directed for the city at the conclusion of the plaintiff's evidence, and the effect of our previous reversal of the case for a new trial is to hold that there was sufficient evidence offered by the plaintiff to withstand a motion for a directed verdict. By making such motion, the city necessarily admitted not only the facts stated in the evidence adduced, but also admitted every conclusion favorable to the plaintiff that a jury might have fairly and reasonably inferred from the evidence. Gunn v. Jacksonville, 67 Fla. 46, 64 Sou. Rep. 435; Gravette v. Turner, 77 Fla. 311, 81 Sou. Rep. 476; Stevens vs. Tampa Electric Company, 81 Fla. 512, 88 Sou. Rep. 303; Anderson vs. Southern Cotton Oil Company, 73 Fla. 432, 74 Sou. Rep. 975.

Max Lenhoff, the convict foreman in charge of the city prisoners, testified that on the day the plaintiff was injured by the automobile driven by one of these prisoners at the direction of Lenhoff, "We were cleaning up the city in general." He was also asked with reference to the automobile which struck the plaintiff, "Q. Did the City pay for the upkeep, for the gasoline and oil of the car?" to which he answered, "Yes, sir". Again he was asked, "The city have a license tag on it?" to which he answered, "Yes,

sir''. Furthermore, Lenhoff also testified when asked the
question, ''What errand did you send this negro on?''
that it was ''To get dinner for the remainder'' referring
to the remainder of the convicts then under his charge,
which he had already previously testified during the
course of the same examination ''were cleaning up the city
in general.'' In addition to this on cross examination by
Senator Davis, counsel for the city, Lenhoff was asked
the question, ''You say the city furnished that tag?'' and
answered, ''Yes, sir''. ''You get those tags through the
superintendent of the garage, don't you?'' ''A. Yes, sir''.
At another place in the testimony Lenhoff was again asked,
''Mr. Lenhoff, when you were hired in this department, it
was with the understanding that you were to furnish your
own car, but the city would furnish the gas and oil and
the upkeep of that car, is that true?'' and answered, ''Yes,
sir''. Dr. A. W. Ziebold, Director of Public Welfare of the
City of Miami at the time of the accident, testified in this
connection as follows: ''Q. Did the City maintain an auto-
mobile for Max Lenhoff as a city employee, or do you
know?'' ''A. Yes, we did. Prior to November 30th, and
we did after November 30th, I presume that we did then.''
Ziebold also testified with reference to the right to use
the prisoners which Lenhoff testified were engaged with
him in the work of ''cleaning up the city in general'' that,
''I had the authority of the City Manager for actually
employing prisoners . . . . That authority was conferred
on us by the City Manager.''

Just prior to the direction of the verdict, the presiding
judge himself summarized the gist of plaintiff's case as
follows:

''At or about noon, one of the prisoners was directed
by the guard to take an automobile, and to go and get
dinner for the men, and return with it in the car.
This car was owned by the guard, and the city furnished
the gas and oil for its use, and paid for and looked
after its up-keep. The prisoner took the car, but while

returning on his way back to the boat yard, the accident occurred. The injury to plaintiff is serious. There is no evidence tending to show contributory negligence on her part, and there is evidence which tends to show that the injury may be permanent."

Direction of the verdict was based on the theory that because the prisoners were alleged to be engaged on some particular work in which the city had no interest, that no liability could arise against the city when a negro convict, sent in to another part of the town to get food for the negro prisoners which were admittedly in the city's custody and required to be fed by the city, negligently ran over the plaintiff with an automobile which the city did not own, but which it "maintained" as testified to by its own employees and officials, and upon which it kept up the repairs and paid for the operating expenses, and also upon which at the time of the accident, was a city license tag issued by the state to the City of Miami and which only the city or those who acted for it were authorized to use.

The declaration was demurred to and the demurrer overruled, and properly so, we think. The proof offered substantially tends to support the facts alleged in the declaration. These facts are that the City of Miami maintained and operated an automobile for the transportation of its servants, agents and employees; that on the occasion of the plaintiff's injuries, the convict foreman, acting within the line of his duty and of his principal's business, sent the car in charge of a negro convict, Harris Johnson, to bring food to its force of convict laborers in the foreman's custody.

It was the city's duty to feed those whom it had in custody and the evidence shows that this duty was on the instant occasion being exercised through Max Lenhoff, the convict foreman, and therefore the work upon which the other convicts were engaged at the time was utterly immaterial to the city's liability for negligently running over

plaintiff while on a mission for or transporting food to the city prisoners.

The testimony to which we have referred, and the inferences which are permitted to be drawn therefrom by a jury, does not warrant the direction of a verdict in favor of the defendant, City of Miami, on the theory that no casual connection between an agent or servant of the city and the negligence complained of, appears.

We hold, on the contrary, that the motion for a directed verdict should have been overruled, and that the plaintiff's case should have been submitted to the jury under proper instructions to determine defendant's liability under the theory of plaintiff's declaration that the negro convict driver of the car which injured plaintiff was acting under authority of and for the City when he negligently injured her on the streets of Miami, the question of the negro driver's agency for the city under the circumstances being a proper question for submission to the jury to be decided as a question of fact. Watkins vs. Sims, 81 Fla. 730, 88 Sou. Rep. 764.

The judgment of reversal and the order heretofore entered that the cause be remanded with directions to grant a new trial and have such other proceedings as may be according to law and justice, should stand, and it is so ordered.

Reversal adhered to on rehearing.

WHITFIELD, P.J., AND TERRELL AND DAVIS, J.J., concur.

BUFORD, C.J., AND ELLIS AND BROWN, J.J., concur in the opinion and judgment.