Collie E. SAPP, Plaintiff,

v.

**UNITED STATES of America,**
**Defendant.**

**Civ. No. 5200–M.**

United States District Court
S. D. Florida, Miami Division.
April 25, 1955.

Sams & Anderson, Miami, Fla., for plaintiff.

James L. Guilmartin, U. S. Atty., E. David Rosen, Asst. U. S. Atty., Miami, Fla., for defendant.

HOLLAND, Chief Judge.

1. On April 6, 1953, the plaintiff was injured in a socalled rear end collision, the automobile in which the plaintiff was riding as a passenger being hit by an automobile, privately owned, being operated by one Orlando Lamaney, while he was in the custody of Officer Cochran of the U. S. Immigration Service. At about 8:00 a. m. Officer Cochran and a co-employee of the Immigration Service called at the Dade County jail, and in an automobile owned by the U. S. Government and assigned to the Immigration Service were in charge of the transportation of four aliens from said jail to the office of the Immigration Service at 39th Street and Biscayne Boulevard in Miami, Florida. The aliens' presence at the said Immigration office was for the purpose of conducting an inquiry into their deportation status. All four aliens were citizens of Barbados, B.W.I., an island in the Caribbean Sea, where English is the accepted language. The individual, Lamaney, was in particular, shown to be a person who spoke and understood the English language. At the deportation hearing the same day, in the forenoon, the hearing was concluded, and the four aliens were ordered deported. Just how long Lamaney and the other three aliens had resided in this country was not shown, but they all had been resident in the Hallendale neighborhood, in adjoining Broward County, Florida, where they had been employed as laborers. At the conclusion of the hearing one Cone, an Immigration officer, directed that the four aliens be taken on the return trip to detention, before deportation, to the Hallendale neighborhood so that they could collect their personal property.

2. The means of transportation from the Immigration office back to detention, by way of the Hallendale neighborhood, was to be by the Government station wagon automobile, which had been used for the trip earlier that morning to the Immigration office.

3. At the Hallendale neighborhood, some twenty miles from the Immigration office in Dade County, it was discovered that Lamaney was the owner of an automobile, a '47 Mercury, which he was buying under contract, and, in view of his impending deportation, Lamaney was desirous of returning the car to the car agency, which had sold the Mercury to him under contract.

4. Under the same general conditions as set forth in No. 3, it was discovered that another of the deportees had certain monies due to him from Jack Ross Construction, and this other deportee was desirous of collecting it before deportation.

5. It is a fair conclusion from the evidence that the facts as to the desirability of the return of the Mercury, and that the monies were due to the other deportee, were made known to the Immigration officers, Cochran and his co-employee, while making the station wagon trip, either during the trip from the Immigration office to the Hallendale neighborhood, or after they reached there. That, however, is immaterial. There is no evidence that the Immigration officer, Cone, knew of or directed that these two details of aiding the deportees be accomplished.

6. The plaintiff, the representative of the employer, Jack Ross Construction, who owed wages to the other deportee, was thought to be working in the vicinity of Northeast 160th Terrace, between Northeast 2nd and 3rd Avenues in the

Miami area, and could be found there. This location, as well as the address of the Mercury seller, were in the same general direction from the Hallendale neighborhood to the north, back toward the Dade County jail.

7. The Mercury was picked up in the Hallendale neighborhood. Officer Cochran and his fellow officer, both of whom with the four aliens, had ridden in the Government station wagon to the Hallendale neighborhood, were presented with the problem of how to divide the officer and deportee personnel in case they cooperated in Lamaney's desire to return the Mercury. Officer Cochran (either singly or with the aid of his co-officer) decided to let the co-officer continue with three of the aliens in the station wagon, and for Cochran to ride with Lamaney in the Mercury, with Lamaney driving his own car. This I hold to have been in the exercise of reasonable care and caution on the part of Officer Cochran.

8. The two automobiles proceeded from the Hallendale neighborhood to the 160th Terrace address, where plaintiff was found. It was discovered that Sapp did not have the money for the wages due the other deportee with him, and that the money could be secured by going to Sapp's residence. Sapp's residence was at 1332 N. W. 117th Street, which location was some five miles from the 160th Terrace address, and to reach which the route of travel would be west on 160th Street to at least Miami Avenue, and then south.

9. At the 160th Terrace address it was decided by Cochran that the deportee to whom the wages were due should get in the Mercury with Cochran and Lamaney, and that the co-officer should continue with the other two deportees in the Government car.

10. At the 160th Terrace address it was arranged by Sapp that he would go to his house in the '53 Ford automobile belonging to one McEwen, the owner of the Ford and friend of Sapp.

11. In the Ford, McEwen was on the left front seat and driving. Sapp was on the right front seat as a passenger.

12. In the Mercury, Lamaney was at the wheel on the left front seat; the other deportee was in the back seat, and Cochran was on the right of the front seat.

13. The Ford stopped at the through street, Miami Avenue intersection, and after stopping started westward again. The Mercury struck the Ford on the rear right side. There was a whip-lashing of plaintiff's neck, and he suffered damages. It is not necessary to go into the details of negligence vel non and the extent of damages in view of my holding herein.

14. Lamaney was in the custody of Cochran, and in this sense was under arrest. But it is to be noted that Lamaney was not in custody as an arrested person, charged or convicted of a crime; rather he was as an alien adjudged to be deported and thereby in Cochran's custody.

Before announcing the Conclusions of Law I wish to discuss the cases cited in argument.

Siciliano v. United States, D. C., 85 F.Supp. 726. In this case the actual driver was a serviceman himself, and the automobile was being put to the proper use, namely, its return to its station, at the time the accident occurred. After quoting from United States v. Campbell, 5 Cir., 172 F.2d 500, the District Judge proceeded to apply New Jersey law. This instant case involves the Florida law of agency.

Wolfe v. City of Miama, 103 Fla. 774, 134 So. 539. The offending vehicle, while owned by the city employee, bore a city license and was operated with the knowledge and consent of the City. While the car was being operated by a convict, placed in charge by the city employee, the mission on which the convict was engaged was to obtain food for other convicts working under the supervision and control of the municipal authorities, the furnishing of food to such convicts being a duty of the City. This case is dissimilar to the facts in the instant case.

Wolfe v. City of Miami, 103 Fla. 774, 137 So. 892. When this same case, 103

Fla. 774, 134 So. 539, was tried a directed verdict was granted; Wolfe appealed and the Court decided it should have gone to the jury. No new principles of law are involved in that decision.

Potter v. Florida Motor Lines (Caraker v. Florida Motor Lines), D.C., 57 F.2d 313. The question at issue was as to whether an infant and feme covert were to be governed by pleas of contributory negligence attributed to them as alleged members of a joint enterprise. While the law of imputed negligence and joint enterprise are discussed at length, and this Court is urged to impute negligence of Lamaney to the Government, I do not think it can be done. Lamaney and Cochran (and Cochran was merely the agent for the Government) were not partners. Lamaney was not Cochran's agent; Cochran was not the master of Lamaney, and the Mercury was not in the actual control of Cochran. Lamaney was in Cochran's custody, but not the Mercury.

Joint enterprise embraces a consideration of not only the type of enterprise but also the participants. The enterprise which brought Lamaney into the picture as a participant was the return of the Mercury. It would require an undue stretching of a theory to say that the enterprise was that of returning the deportees to confinement. The participants were Cochran and Lamaney. The immediate operation, the enterprise, the driving of the Mercury, was not the transportation authorized by the Government. Cochran, as the Government's agent, was not so engaged as a participant. The Sapp case should be decided on the principles of agency, and whether Cochran was negligent in allowing Lamaney to drive his own car under Florida law, and my application of these principles to the Sapp case are herein set out.

The defendant cites the case of United States v. Sharpe, 4 Cir., 189 F.2d 239. The distinction between applying Florida law as to tort liability and applying the body of Federal law as to determining the relationship of the Government to its employees is sound in my judgment, but this Sapp case calls for the application of Florida law, which I have utilized in arriving at the conclusions reached. The application of Florida law in this case is proper under United States v. Stewart, 5 Cir., 201 F.2d 135, and State of Maryland, for use of Pumphrey, v. Manor Real Estate & Trust Co., 4 Cir., 176 F.2d 414.

Bush Grocery Co. v. Conely, 61 Fla. 131, 55 So. 867. The question there was estoppel to deny the agent's authority. Cochran did not allow or arrange for Lamaney to drive the Government car, which would give occasion to consider the doctrine involved in the Bush case. The driving by Lamaney of his own car in connection with the return of the Mercury to Lamaney's contract seller was too far removed from the transportation of the deportees to their place of confinement, even with the authorization to go by the Hallendale neighborhood to accommodate the deportees in collecting their personal belongings. There is no basis in the Sapp case for applying the law as to estoppel to deny authority to do a particular act by an individual, admittedly an agent.

### Conclusions of Law.

1. Lamaney was not an employee of the United States.

2. There was no authority in Cochran to make or constitute Lamaney an employee or agent of the United States.

3. Cochran acted with due and reasonable care and caution in arranging for Lamaney to drive the Mercury, and there is no basis or predicate for holding the defendant liable for the damages suffered by plaintiff, notwithstanding how regrettable it may be that Sapp has suffered damages from this incident.

4. The complaint should be dismissed.

5. The costs of this action should be taxed by the Clerk against the plaintiff.

### Order.

It is, therefore, Ordered and Adjudged that the complaint be and the same is hereby dismissed.