152 So.2d 486 (1963)
Charles Benjamin NICHOLS, Appellant,
v.
Billy Dean McGRAW and Gerlach Motor Company of Milton, Florida, Inc., a Corporation, Appellees.
No. D-312.
District Court of Appeal of Florida. First District.
April 18, 1963.
Rehearing Denied May 15, 1963.
*487 William W. Henderson, Jr., of Fisher & Hepner, Pensacola, for appellant.
A.L. Johnson, Milton, and Beggs, Lane, Daniel, Middlebrooks & Gaines, Pensacola, for appellees.
RAWLS, Judge.
Appellant-plaintiff, Charles Benjamin Nichols, in various capacities sued appellee-defendants McGraw and Gerlach Motor Company for damages arising out of an automobile accident. After the pleadings were settled plaintiff Nichols moved for a summary final judgment against each defendant and defendant Gerlach concurrently moved for a summary final judgment in its favor. The motions were based upon the pleadings, depositions and documentary evidence presented to the trial judge. At this stage of the proceeding after setting forth all of his conclusions in a detailed memorandum opinion, the trial judge entered a summary final judgment in favor of defendant Gerlach and denied plaintiff's motion for summary judgment as to the liability of defendant McGraw.
Plaintiff now appeals from the order and summary final judgment entered by the trial court.
We will confine our discussion to that portion of the record that affects defendants Gerlach and McGraw.
The tragic occurrence giving cause to this lawsuit could well be termed a "Christmas accident." A fair appraisal of the facts as presented in the depositions and documentary evidence reflects that McGraw was an automobile salesman employed by Gerlach Motor Company at Milton, Florida. At the close of business on the night of December 23, he attended a Christmas party that the motor company gave for its employees. Shortly before 9:00 P.M. McGraw departed the party, stopped by a jewelry store in Milton, bought a Christmas present for his wife and a few minutes after 9:00 P.M., proceeded towards Pensacola to deliver Christmas presents to friends. At about 9:30 P.M., McGraw attempted to pass an automobile driven by plaintiff, who was also proceeding west, and sideswiped another automobile (owned and operated by defendant Gillman) which was parked in the east bound traffic lane. This impact caused McGraw's vehicle to strick Nichols' automobile, resulting in the death of Nichols' wife and child.
The main issue confronting us is the propriety of the summary judgment entered in favor of Gerlach. To reach this issue, we must consider the complaint coupled with the proofs and determine whether same presented a material question of fact with reference to the following theories:
1. Liability of Gerlach predicated upon its ownership of the automobile driven by McGraw at the time of the accident.
2. A determination of Gerlach's liability, by reason of it permitting McGraw the unrestricted use of its dealer's tag.
The main thrust of plaintiff's argument goes toward the employer-employee relationship existing between Gerlach and McGraw and the use by McGraw of a demonstrator with the dealer's tag in carrying out the duties of his employment. Additional facts most favorable to plaintiff in support of his position show: McGraw was required to purchase a new automobile in order to be able to demonstrate the products stocked by his employer, and that such an arrangement was of benefit to Gerlach. To encourage its new car salesmen to purchase and operate new demonstrators, *488 Gerlach sold such demonstrators, including the demonstrator owned and driven by McGraw, at cost and aided in arranging for the salesmen a favorable finance plan which was not available to the general public. Gerlach furnished one of its dealer's tags to McGraw for his unrestricted use, which tag was by law only available for use in Gerlach's business.[1] It was a standard practice for Gerlach's salesmen to make night calls in selling automobiles and, therefore, McGraw was "on duty" at all times. Plaintiff views these facts as establishing liability under the principles of law applicable to (1) respondeat superior and (2) estoppel on Gerlach's part to deny ownership.
We find in Joel v. Morison[2] an early statement by the English courts as to the liability of a master for his servant's negligent acts. There, the pedestrian plaintiff was crossing the common highway and was struck by a horse and cart which was alleged to have been negligently operated by the defendant's servant. The court in sustaining the verdict for the plaintiff stated on page 1339:
"If he [the servant] was going out of his way against his master's implied commands, when driving on the master's business, he will make his master liable; but if he was going on a frolic of his own, without being at all on his master's business, the master will not be liable."
Anderson v. Southern Cotton Oil Company[3] is the landmark case of this jurisdiction dealing with the liability of a master for his servant's negligent acts resulting in an automobile accident. There, the employee of the defendant company used an automobile owned by it in transacting the business of the company and incidentally drove it to lunch picking up his girl friend on the way. During the course of his lunch expedition the driver had an accident and the company defended on the premise that the driver was not operating the vehicle in the course of its business. The Supreme Court, in reversing a directed verdict for the defendant, held that it was a question for the jury to determine whether the employee driver was acting within the express or implied authority of the defendant at the time of the accident. After trial of this case and on a subsequent appeal the Supreme Court[4] applied the dangerous instrumentality doctrine holding that an automobile, being a dangerous machine when operated upon the public highways, renders its owner responsible for the manner in which it is used and his liability extends to its use by anyone with his knowledge and consent.
In Wolfe v. City of Miami[5] the owner of the automobile was employed by the city as a foreman who supervised the working of convict laborers. The foreman entrusted his automobile (for which the city furnished gasoline, oil, repairs, and a municipal tag with which to operate same in the city's business) to a convict, and sent him after food for the other convicts whom the city was under the duty to feed. The convict had an accident in returning with the food. The court, in placing liability under these circumstances upon the city, stated the following on page 541 of 134 So.:
"Such automobile was therefore to all intents and purposes an automobile of the city of Miami which was intrusted by an authorized city employee to the negro convict * * *."
*489 In Western Union Telegraph Company v. Michel[6] the telegraph company employed a messenger who furnished his own motorcycle for the delivery of messages for the company. This messenger was involved in an accident while returning to the company's office after eating his lunch. In finding that the ownership of the motorcycle was not material, the Supreme Court held that if a motorcycle was being used in the business of the defendant with its knowledge and consent, it could not avoid liability for the negligent use of it. The court further held the rule is well settled that a master is responsible for the torts committed by his servant in the scope and range of his employment, and is liable for those committed in a slight deviation or departure from his business, but when the deviation or departure of a servant amounts to an abandonment of the master's business and the undertaking of an enterprise or mission of his own without the master's consent, knowledge, or approval and having no relation to the master's business, then the master cannot be held liable for torts so committed.
That the owner of a motor vehicle is not liable under any or all circumstances is evidenced by Ford Motor Company v. Floyd.[7] There, DesChamps, an employee who was allowed the use of a company car, picked up a woman friend while returning from a business trip and carried her for the weekend to Jacksonville Beach, where they rented a cottage. On Sunday morning the woman drove the company's car to another part of town to procure ice and a newspaper. While returning to the cottage where she had left DesChamps, she was involved in a serious automobile accident resulting in the death of two people. The Supreme Court in reversing the judgment against Ford Motor Company held that no liability existed on the part of Ford in that it was clearly shown that the automobile was not being operated with its consent. The court further stated on page 602 of 188 So.:
"It is plainly apparent from the record that when the defendant DesChamps reached the city from a journey on behalf of his company that business was for the nonce completed. The continuation of his activities from that time was a junket, having no connection whatever with the business in mind at the beginning of the week when the car was placed in his control for the express purpose of tending the affairs of his employer."
In Wilson v. Burke[8] an owner-driver leased his truck-tractor to Great Southern Trucking Company for the purpose of operating same in the company's business under its licenses and permits. The right hand door of the truck had painted upon it "Operated by Great Southern Trucking Co. I.C.C. Cer. M.C. 2900", and the truck bore a Florida Railroad and Public Utilities Commission tag on the front which had been issued by reason of Great Southern's application. The actual title to the truck was vested in the owner-operator. The accident occurred while the truck was not being operated in the business of the company. In upholding the trial court's ruling denying the trucking company the right to introduce the title certificate to the truck and the lease papers, it appears that the Supreme Court held that the trucking company was the real owner of the truck in that it had all of the indicia of ownership including dominion[9] thereof even though the bare legal title was not vested in it.
McAllister v. Miami Daily News[10] involves similar allegations as found here with reference to the doctrine of respondeat *490 superior. This case involved an accident concerning one Frutkoff, an employee of the Miami Daily News, who utilized his automobile at times in the business of his employer. There, in sustaining a directed verdict in favor of Miami Daily News the Supreme Court stated on page 614 of 17 So.2d:
"* * * [B]ecause the evidence failed to establish that Frutkoff, at the time of the collision, was acting within the scope of his employment or was then pursuing his employment or doing anything to advance the interest of the Miami Daily News when plaintiff was injured, but the evidence established that Frutkoff at the time of the injury was operating his own automobile and engaged in a mission of his own and not that of the Miami Daily News."
In Foremost Dairies, Inc. of the South v. Godwin[11] we find a similar situation. In the Foremost case its employee D.W. Howell utilized his automobile in the business of his employer. Foremost kept the Howell car in repair, paid for the licenses, tires, and fuel. Howell on his way to work one morning was involved in an automobile accident which resulted in a judgment against him individually and against Foremost. The Supreme Court in reversing the judgment as to Foremost found that the contributions by the company towards the operation of the automobile amounted to remuneration to Howell for the transportation he furnished to facilitate the collection of his employer's bills and accounts. The court further found that Foremost was not liable, Howell having not yet entered upon his master's business.
Analyzing the foregoing cases, it appears that the general principles of law enunciated therein stand for the following principles involving the negligent operation of a motor vehicle:
1. An owner is liable when the vehicle is operated with his knowledge and consent, which may be either express or implied. Bare legal title is not conclusive as to ownership, and under certain factual situations, a person or other legal entity may be estopped from denying ownership.
2. Where the relationship of master and servant or principal and agent, exists, the theory of respondeat superior may be applicable, and in an appropriate case the superior is liable when the vehicle, without regard to ownership, is used in the business of the superior with his consent (express or implied) for a business purpose; and that slight deviation does not take the use out of the business purpose.
As to the ownership of the automobile driven by McGraw and involved in the accident, it is not controverted that prior to the date of the accident an application for title duly executed by Gerlach as seller and McGraw as purchaser was filed with the Tax Collector of Santa Rosa County nine days prior to the accident. This record poses no question as to subterfuge  McGraw bought the car, operated same in the business of Gerlach and for his own personal use. Therefore, the real issue confronting the trial judge was whether or not McGraw while operating his automobile had abandoned the business of his master and was at the time of the accident pursuing his own personal mission. We agree with the trial judge that the record presents no disputed question of fact as to McGraw's abandonment of Gerlach's business. It is undisputed that McGraw participated in the Christmas party festivities and in the late evening left his employer's place of business and from that time was going on a frolic of his own without being at all on his master's business.
We now consider the dealer's tag and estoppel by Gerlach to deny the question of ownership. It is undisputed that Gerlach as a dealer was able to purchase and did purchase the dealer's tag in question and *491 furnished same to McGraw for his unrestricted use on the automobile involved in the instant accident. Plaintiff urges liability as a matter of law upon Gerlach by reason of those provisions of F.S. § 320.13, F.S.A., which provide that same shall be valid for use on motor vehicles owned by the registered dealer to whom such tag was issued and while being operated in connection with such dealer's business. Linking the foregoing statute together with cases heretofore discussed, plaintiff assumes the position that Gerlach exercised such dominion over McGraw's automobile as to make Gerlach liable in the instant cause.
Defendant Gerlach insists that this court has already decided the question of liability in Lambert v. Johnson[12] which held that the use of a dealer's tag does not per se render the licensee liable in tort. We do not find that the Lambert case is conclusive of this point since it did not encompass any relationship bringing into play the doctrine of respondeat superior. There, the motor company gratuitously loaned a dealer's tag to the purchaser of an automobile for the convenience of the purchaser. Clearly the doctrine of respondeat superior was not existent under the factual situation presented there. We conclude that Lambert v. Johnson is not decisive in the instant situation. However, as reflected by our extensive review of the cases establishing liability under various principles of law, we find no basis for sustaining plaintiff's contentions with reference to this point. The statutes on this question do not impose a civil liability for violation thereof, nor do we find that the statutes contemplated extending liability to a dealer in such a situation as here presented.
We find no case decided in this jurisdiction which imposes liability by reason of ownership of a vehicle tag. In the Wolfe[13] case a municipal tag was utilized on the employee's vehicle. However, that case was clearly decided on the theory that the vehicle itself was being used in the business of the city at the time of the accident, and it is our conclusion that the fact the vehicle bore the municipal tag was an element of the proof going toward whether or not the vehicle was being operated in the business of the city with its knowledge and consent.
Plaintiff refers us to two cases from other jurisdictions and urges that same should be applied in the instant cause. In Reese v. Reamore[14] the New York Court of Appeals construing specific statutes of that jurisdiction concerning the regulation of dealer's tags held that the motor company was estopped to deny ownership of an automobile involved in an accident bearing its dealer's tag when same was being used with its knowledge and consent. We note that the New York statutes are quite different from those in existence in Florida in that the statute construed required the dealer to follow an express administrative procedure prior to permitting any vendee to use a dealer's license plate. Other provisions of the New York statutes are at material variance with our provisions.
New Jersey followed the New York rule in Eggerding v. Bicknell.[15] Again, we find that New Jersey in reaching its decision, construed its own statute pertaining to this subject which clearly prohibited the use of the dealer's plates on a car transferred to the purchaser. The New Jersey case involved a novel proceeding. In that case the plaintiff alleged that Chonka Motors negligently operated the automobile bearing its dealer's tag through one Bicknell, its "agent, servant and employee". The jury returned a verdict against Bicknell and no cause of action against Chonka Motors which resulted in the finding that Bicknell *492 was not operating the automobile as the "agent, servant and employee" of Chonka Motors. However, in a proceeding brought by plaintiff against Chonka Motors' insurer under an omnibus insurance clause, the New Jersey Supreme Court held Chonka's insurer liable on the theory that Chonka could not deny ownership of the automobile driven by Bicknell since he was using the dealer's tag owned by Chonka. So we find that the motor company was not liable to the plaintiff but that the motor company's insurer was so liable. We will not accept this as authority for imposing a rule of liability sought by the instant plaintiff.
Our conclusion is that the law of this jurisdiction imposes liability upon the owner of an automobile either by virtue of actual ownership of same, or by facts and circumstances precluding one exercising such dominion over the vehicle from denying ownership. The facts and circumstances reflected in plaintiff's record fall far short of meeting the estoppel requirement, and as reflected above the record is conclusive that the motor company did not have actual ownership of the automobile in question.
It is our conclusion that extension of liability predicated upon the illegal use of a dealer's tag is a matter of concern to the legislative branch of our government, and although we recognize that many abuses of this special license privilege may exist, we do not think it is within our province to promulgate a rule of liability or to otherwise usurp legislative authority as a means of correcting such abuses.
The other points assigned as error by plaintiff have been carefully reviewed and we find same to be without merit. The decision of the trial court is affirmed.
Affirmed.
WIGGINTON, J., concurs.
STURGIS, Acting C.J., dissents.
STURGIS, Acting Chief Judge (dissenting).
I respectfully dissent because in my opinion the amended third count of the complaint states a cause of action against Gerlach Motor Company and because I feel that the proofs on Gerlach's motion for summary judgment present issues of fact which it is the exclusive province of the jury to resolve. Said count is as follows:
"THIRD COUNT
"That at all times material to this action the defendant, Gerlach Motor Company, Inc., was the owner of a certain 1960 Florida Dealer's Tag, which it caused to be issued in its name by the Florida Motor Vehicle Commissioner, upon its application therefor, a copy of which application is attached hereto and made a part hereof; that the Defendant, Gerlach Motor Company of Milton, Florida, Inc., entrusted the aforesaid dealer's tag[1] to the Defendant Billy Dean McGraw, allowing the said McGraw the unrestricted use thereof; that the said McGraw with the knowledge and consent of the Defendant Gerlach Motor Company of Milton, Florida, Inc., placed said dealer's tag upon a motor vehicle owned by him in lieu of obtaining a private license tag therefor in his own name; that at the time and place of the collision which is the subject of this action the said McGraw so negligently and carelessly operated said motor vehicle, which then and there, with the knowledge and consent of the Defendant, Gerlach Motor Company of Milton, Florida, Inc., bore the aforesaid dealer's tag, that he caused the injuries complained of in the complaint."
*493 In a memorandum opinion granting Gerlach's motion for summary judgment the learned trial judge commented:
"The third count intrigues the Court. Here liability is attempted to be predicated upon the theory of entrustment of a dealer's tag by Gerlach Motor Company to McGraw. Respectable authority from other jurisdictions would permit the imposition of liability against Gerlach Motor Company in such a situation. Frankly, were it not for the decisions of the Supreme Court of Florida and of the District Court of Appeal for the First District cited and set out in Lambert v. Johnson, 109 So.2d 187, this Court would be inclined to go along with the theory contended for by the plaintiff. However, this Court feels bound by such decisions and must, therefore, grant the summary judgment as to this count."
I feel that the majority oversimplifies the issue before the trial judge (as well as before this court) as being whether or not McGraw at the time of the accident had abandoned the business of his master, Gerlach, and was pursuing his own personal mission. This simplification ignores Gerlach's complicity in the vital transaction as a result of which McGraw purported to lawfully operate the motor vehicle on the public highway at the time of the accident, that is, Gerlach's furnishing to McGraw of the license in question.
The majority holds, and I agree, that the decision of this court in Lambert v. Johnson, 109 So.2d 187 (Fla.App. 1959), "did not encompass any relationship bringing into play the doctrine of respondeat superior" and is not decisive of the issue before this court. And this is true of the cases cited in Lambert as authority for the conclusion reached therein:
Thus in Platt v. Dreka, 79 So.2d 670 (Fla. 1955), cited in the Lambert case, it was held that even though the records of the Motor Vehicle Commissioner's office did not show regular transfer of title by the previous owner of an automobile, where eight months prior to the mishap in which such automobile was involved such prior owner had given a bill of sale of the automobile to his insurer in return for a total loss settlement thereon arising out of its theft and ensuing wreck, such owner was not responsible for negligent acts of a subsequent operator of the automobile causing injuries to third parties.
The same principle and holding is found in Palmer v. R.S. Evans, Jacksonville, Inc., 81 So.2d 635 (Fla. 1955), where approximately twenty minutes after Evans and one Hughes had consummated an agreement whereby Hughes purchased an automobile from Evans, Hughes was involved in an accident with the plaintiff, Palmer, who sought recovery against Evans, and notwithstanding the fact that the purchase agreement was not fully executed until the day after the accident occurred.
McAfee v. Killingsworth, 98 So.2d 738 (Fla. 1957), was a suit by McAfee for injuries sustained in an automobile accident in which a third party was the driver of the vehicle which collided with plaintiff's. The defendant, Killingsworth, was charged with being vicariously liable as the consenting owner of the vehicle. He denied ownership of the automobile and the jury, having been instructed that the driver's negligence had been proven and that Killingsworth's liability depended on whether he owned the car at the time of the accident, returned a verdict in favor of Killingsworth. The Supreme Court affirmed, holding that the evidence was sufficient to establish the common-law prerequisites of a sale from Killingsworth.
In each of the above cited cases the appellate court directly or by inference held that the common-law rules governing the sale of automobiles may apply in lieu of the statutory provisions found in Chapter 319, Florida Statutes, and that where the *494 proofs establish that the sale had been consummated before the accident occurred, the seller is relieved from vicarious liability as the consenting owner of the automobile. And it is of transcending importance to a proper disposition of the issue on this appeal to note that the problem with which we are confronted  the question of the effect of Gerlach's act in permitting McGraw the unrestricted use of the restricted license tag  was not involved in either of the cited cases or, for that matter, in either of the cases on which the majority relies for its conclusion. It does not appear that said question has heretofore been raised in this jurisdiction.
While the legislature has not spelled out vicarious liability on the part of one to whom is issued the limited type of license tag here involved, that lapse does not operate to foreclose the judiciary of the power and, as I conceive it, the duty to establish the rule of law that should apply to the situation here presented. It is no secret that the statute law is fat with matters that are simply confirmatory of the common law. Appellate courts beg the judicial function when they retire too broadly behind the obvious generalization that courts should not invade the legislative power. That concept, like many others in the law, must be kept in balance, and not adhered to to the point that it becomes an excuse for stagnation rather than a precept for sound judicial progress. The vast body of the law consists of the so-called case or common law, much of which is devoted to interpretation of statutory and constitutional provisions, and all of which in final analysis is a species of judicial legislation. Indeed, the rule of stare decisis rests on the concept that decisions make the law, and would otherwise be meaningless and innocuous.
The well-ingrained dangerous instrumentality doctrine, for example, is a comparatively modern but excellent creature of the common law, born out of the judicial mind and in recognition of the changing times, to which the law must always be amenable if it is to serve the best interests of society.
The undisputed facts in this case reflect that McGraw, Gerlach's salesman, as an incident to the performance of the duties of his employment, was required to purchase from Gerlach a new automobile in order to be able to demonstrate the products stocked by Gerlach; that such arrangement was beneficial to Gerlach; that to accommodate that business convenience and arrangement Gerlach sold at cost to McGraw the demonstrator owned and driven regularly by McGraw and aided him in financing the purchase upon a plan that is not available to the general public; that it was standard practice for Gerlach's salesmen to make night calls in selling automobiles, so that McGraw was "on duty" at all times; and on the proofs before the trial court there existed a reasonable inference that the dealer's license tag issued to Gerlach, under the cloak and apparent authority of which McGraw's demonstrator automobile was being operated at the time of the accident, was delivered to him by Gerlach with knowledge that it would be used at all times in the operation of McGraw's automobile, whether on personal or business missions, thus raising a question of fact for the jury to determine.
I do not quarrel with the line of cases reviewed by the majority on the subject of the liability of a master for his servant's negligent acts in the operation of the master's automobile; but I suggest that the dangerous instrumentality doctrine enunciated by the Florida Supreme Court in Anderson v. Southern Cotton Oil Co., 73 Fla. 432, 74 So. 975, L.R.A. 1917E, 715 (1917), and applied in Southern Cotton Oil Co. v. Anderson, 80 Fla. 441, 86 So. 629, 16 A.L.R. 255 (1920), is a separate and distinct doctrine, based on independent concepts of law; that it is a special outgrowth of the common law and is quickly recognizable as a type of judicial legislation flowing as normally and logically as suds from *495 soap and water in the healthy viability and capacity of the law to meet the progressive needs of the supposedly enlightened society under which we live.
I think it is an insupportable anomaly to hold that the owner of a motor vehicle is vicariously liable for the negligence of any person operating it with his actual or implied consent, and in such instances to visit that liability past the "third and fourth generations" of those who may successively operate the vehicle with the consent of the person previously having possesion of it, and to also hold that the person to whom is issued a restrictive dealer's license as here involved (the instrumentality providing a prima facie open sesame for the unfettered operation of a motor vehicle on the public highways), lawfully usable only on "motor vehicles owned by the registered dealer to whom such tag was issued and while being operated in connection with such dealers' business" (F.S. 320.13, F.S.A.), is not vicariously liable for the negligent operation of an automobile which is not only not owned by the holder of such license but is with the knowledge and abetment of the licensee unlawfully operated without limitation of use on the public highways under the apparent authority of such license. In this case the proofs show that the licensee delivered his dealer's license plate into the hands of the owner-operator of the vehicle with knowledge, actual or implied, that such vehicle would be used under the false authority of such license for purposes other than in connection with the licensee's business.
There is respectable authority to support the view to which I adhere, and my research has developed none to the contrary where the facts parallel those in the case on review. Thus in Reese v. Reamore, 292 N.Y. 292, 55 N.E.2d 35 (1944), the defendant automobile dealer permitted one of his mechanics, who had purchased an automobile from him, to use in the operation of the automobile dealer's license plates which were issued to the dealer. The plates were on the automobile some seven weeks later when it was involved in a collision while being driven by buyer's permittee. The defendant dealer was held to be estopped from denying that he was the owner of the automobile on the premise that
"* * * one who has deliberately violated the laws which require accurate identification of the owners of motor vehicles operating on the highways through the use of number plates and a system of registration may not avoid liability for the negligent operation of vehicles registered in their names or identified by their license plates by denying the truth of their false representations of ownership deliberately made either by false registration or by illegal use of their plates. Where the dealer complies with the simple and explicit requirements of the statute authorizing the use of his plates by others, or where the plates are used by others without his permission, express or implied, this principle has no application. * * * If, however, the dealer permits the use of his plates in deliberate violation of the statute, then the situation is precisely equivalent to the false registration involved in Shuba v. Greendonner, supra [271 N.Y. 189, 2 N.E.2d 536], and he may not deny his ownership which he has falsely evidenced by permitting the unlawful use of his plates by another. Any other rule would be against public policy, would encourage fraudulent and illegal deceptions on those engaged in enforcing the traffic laws of the State and deprive the public of the protection which these laws are intended to extend to those using the public highways." (Emphasis supplied.)
F.S. Section 320.13, F.S.A., contains simple and explicit requirements with respect to the use of dealer's license plates, and the uncontested proofs in the case on review reflect that the defendant dealer, Gerlach, permitted its salesman, defendant *496 McGraw, the use of its dealer's license plate on McGraw's privately owned automobile, which in itself was a deliberate violation of the statute. In addition thereto, the proofs are clearly susceptible of the conclusion, directly or by reasonable inference, that Gerlach permitted McGraw to use the dealer's license plate for purposes other than in connection with Gerlach's business, which if true would simply add another violation of the statute sufficient in itself to work an estoppel in like manner as above stated.
In Eggerding v. Bicknell, 20 N.J. 106, 118 A.2d 820 (1955), the Supreme Court of New Jersey, quoting with approval from Reese v. Reamore, supra, held that a dealer may not deny ownership of a motor vehicle where he has falsely evidenced ownership by permitting the unlawful use of his license plates on an automobile actually owned or operated by another. In Eggerding the appellate court recognized that in some jurisdictions (Florida being no exception) broad social legislation has been enacted imposing vicarious liability upon the owner of a motor vehicle for injury resulting from the negligent operation thereof by the owner or by any other person with the owner's consent, and the court also referred to many statutory provisions of New Jersey relating to the registration and licensing for operation of motor vehicles that find substantial counterparts in the statutory law of this state. The following excerpt from the decision in Eggerding states the rule and reasoning which I think our courts should adopt:
"Though we have no legislation comparable to the New York statutory provision which imposes liability, even without any showing of agency, upon an owner whose car was being operated with his consent, there would seem to be no just reason for declining to invoke the wholesome New York view which prohibits or estops a dealer from denying that he was the owner of a car which he illegally permitted to be operated with his dealer's plates."
The Florida legislature has at great pains provided rules for the purpose of facilitating identification of owners of motor vehicles licensed to operate on the public highways of this state. The statute strictly limits the issuance and use of the license here involved. Public policy dictates that the holder of such license should not be permitted to deny ownership of a motor vehicle the operation of which on the public highway he has falsely induced under color of the dealer's license issued for the limited purposes prescribed by the statute.
Where the holder of a Florida dealer's license plate unlawfully makes it available for use on an automobile owned by another, especially under circumstances indicating that the permittee has the unrestricted use of such plate, I suggest that under the rationale of the above cited New York and New Jersey cases he should be estopped to deny ownership of the vehicle the negligent operation of which proximately results in injury to an innocent third person. In my opinion the liability of such licensee rests upon the the same considerations out of which the Florida dangerous instrumentality doctrine was formulated.
On the premise stated I would hold that the third count of the complaint herein states a cause of action and that it is the province of the jury to determine whether defendant Gerlach Motor Company permitted defendant McGraw such use of its dealer's license as to be estopped to deny that it was the owner of the automobile operated by McGraw at the time of the accident; and I would further hold under the circumstances of this case that Gerlach is estopped to deny that the automobile was being used for Gerlach's business purposes at the time of the accident.
I therefore dissent.
NOTES
[1] See F.S. 320.13, F.S.A. 1961.
[2] Joel v. Morison (1834) 6 Car. & P. 502, 172 Eng.Rep. 1338, 1339.
[3] Anderson v. Southern Cotton Oil Co., 73 Fla. 432, 74 So. 975, L.R.A. 1917E, 715 (1917).
[4] Southern Cotton Oil Co. v. Anderson, 80 Fla. 441, 86 So. 629, 16 A.L.R. 255 (1920).
[5] Wolfe v. City of Miami, 103 Fla. 774, 134 So. 539, 541, 137 So. 892 (1931).
[6] Western Union Telegraph Co. v. Michel, 120 Fla. 511, 163 So. 86 (1935).
[7] Ford Motor Co. v. Floyd, 137 Fla. 301, 188 So. 601 (1939).
[8] Wilson v. Burke, 53 So.2d 319 (Fla. 1951).
[9] "Dominion" is defined by Webster's New Collegiate Dictionary as "Supreme Authority" and as a synonym to "power".
[10] McAllister v. Miami Daily News, 154 Fla. 370, 17 So.2d 613 (1944).
[11] Foremost Dairies, Inc. of the South v. Godwin, 158 Fla. 245, 26 So.2d 773 (1946).
[12] Lambert v. Johnson, 109 So.2d 187 (Fla.App.1st, 1959).
[13] Wolfe v. City of Miami, 103 Fla. 774, 134 So. 539, 137 So. 892 (1931).
[14] Reese v. Reamore, 292 N.Y. 292, 55 N.E.2d 35 (1944).
[15] Eggerding v. Bicknell, 20 N.J. 106, 118 A.2d 820 (1955).
[1] Section 320.13, Florida Statutes, F.S.A., provides in part:

"Dealers' tags provided in this chapter shall be valid for use on motor vehicles owned by the registered dealer to whom such tag was issued and while being operated in connection with such dealers' business; * * *."