QUESTIONS: 1. Is a prisoner responsible for the results of his wrongful civil actions? 2. What is the city's responsibility concerning the medical expenses incurred by a wounded prisoner? 3. What is a city's liability concerning prisoners and, where the city is not liable, with whom does liability for prisoners lie? 4. Is a subject in custody who, if shot and unconscious, will be formally arrested upon release from the hospital? 5. Is there case law, either criminal or civil, where precedents have been set concerning the foregoing questions?
SUMMARY: A prisoner is responsible in tort for any wrongful civil action he commits. The liability of a municipality or a county (sheriff) for the cost of medical care of a person wounded by a law enforcement officer while said person was committing a crime must be determined on a factual basis. A municipality is responsible for medical care of municipal prisoners, while the county (sheriff) is responsible for county prisoners. The test to be applied for this determination is the nature of the crime which the wounded person will be charged with or convicted of, i.e., for a violation of a state law or of a municipal ordinance. A city may be liable for the torts committed by prisoners when prisoners are working as agents of the city and may be liable for injuries to prisoners resulting from the negligence of the person in charge of them. All of the elements of a valid arrest are present and a person is in custody when the person caught in the overt act of committing the crime forcibly resists or flees, is shot, and is taken to a hospital in an unconscious condition. AS TO QUESTION 1: As a general rule, all competent persons are liable for torts which they commit, and I know of no reason why a prisoner should not be held responsible for any wrongful civil action he commits. See 74 Am. Jur.2d Torts s. 53. This would include any wrongful civil actions committed in the course of committing a felony. Accordingly, your first question is answered in the affirmative. AS TO QUESTION 2: It was held in AGO 059-148 that a city is required to furnish and pay for hospitalization and medical care for an indigent municipal prisoner. Attorney General Opinion 021-352 recognized the duty of a sheriff to provide medical care for prisoners in his custody, and AGO 046-424 stated that this duty included the payment of physician and hospital expenses for a prisoner treated after he had been shot by a deputy sheriff in the performance of his duty. Since the rendering of the above opinions, Rule 10B-8.08 of the Department of Health and Rehabilitative Services has been promulgated pursuant to s.951.23, F.S. Rule 10B-8.08 states that the officer in charge of a detention facility shall provide for the medical care, including physician's care and hospitalization, for inmates. The rule makes no distinction between indigent and nonindigent inmates, and therefore, as pointed out in AGO 072-346, medical care now should be provided for all prisoners. Section 951.23, F.S., defines a municipal prisoner as a person detained in a municipal detention facility by reason of being charged with or convicted of violation of a municipal ordinance or law; a county prisoner is defined as a person detained in a county detention facility by reason of being charged with or convicted of either a felony or misdemeanor. Attorney General Opinion 072-346 held that "a sheriff has the duty to provide medical care for a prisoner in his custody for violating a state law even though the arrest was made by a state or municipal officer," when the medical expenses resulted from the activities of the arresting state or municipal officer. That opinion was based on the fact that "a municipal officer who arrests a person for violation of a state criminal statute, is acting on behalf of the state when so doing," and therefore his position is similar to that of state patrolmen who, in AGO 059-18, were described as "agents of the state directed by law to deliver their prisoners to the sheriff of the county wherein arrested, so that they held their prisoners in their official capacities, as officers of the court or for the county, and not in their individual capacities." On the basis of the foregoing, it can be concluded that persons charged with violating a state criminal statute, rather than a municipal ordinance or law, who are arrested by a municipal officer, taken directly to a hospital for medical care, and then taken to the county detention facility, are in fact "county prisoners" from the time they are first taken into custody. This conclusion is not affected by the fact that, due to the emergency situation, the prisoners are taken directly to a hospital by municipal officers without first being routed through the county jail and are never physically within the confines of the county jail before hospitalization or by the fact that the sheriff does not formally accept custody of them prior to their hospitalization. Where municipal officers are enforcing state law, they are acting on behalf of the state and holding the prisoners in their capacities as officers for the county; thus their prisoners are constructively county prisoners, and the sheriff is responsible for any medical expenses incurred in their treatment and care. The answer to your second question is that municipalities are responsible for the medical expenses incurred by wounded municipal prisoners. However, under the factual situation in your letter, the wounded prisoners were in fact county prisoners and the sheriff would be responsible for their medical expenses. AS TO QUESTION 3: In Hargrove v. Town of Cocoa Beach, 96 So.2d 130 (Fla. 1957), the Supreme Court of Florida held at p. 133 that except where a municipal corporation is exercising its legislative, quasi-legislative, judicial, or quasi-judicial powers, "when an individual suffers a direct personal injury proximately caused by the negligence of a municipal employee while acting within the scope of his employment, the injured individual is entitled to redress for the wrong done." Thus municipalities now may be held liable for the torts of their employees. The Florida Supreme Court in Wolfe v. City of Miami, 137 So. 892 (Fla. 1931), stated that when a prisoner, at the direction of his foreman, was operating the foreman's automobile on an errand to procure food for his fellow prisoners who were working for the city, the city's liability on a theory of agency for the negligent conduct of the prisoner operating the automobile was a question for the jury. A city's liability was further explained in Lewis v. City of Miami, 173 So. 150 (Fla. 1937), where the Florida Supreme Court held at p. 152 as follows: In the case of municipal prisoners the prisoners are deemed to be within the custody of the municipality as a public corporation, notwithstanding the fact that the designated municipal officials, as individuals have been charged with specific duties and responsibilities respecting the keeping and sustenance of such prisoners, as well as the execution of the laws and ordinances respecting them. It is on this theory that cities have been generally held liable for the board of municipal prisoners held in county jails as places of detention [Cites omitted]. And in this state of negligent injuries inflicted by municipal convicts on third parties, see Wolfe v. City of Miami, 103 Fla. 774, 134 So. 539, 137 So. 892. (Emphasis supplied.) This view is in accord with that expressed in the only foreign cases found dealing with the question of the liability of a city for the torts of its prisoners, which held that a city is liable for the negligent conduct of convicts while such convicts are working for the city. See City of Atlanta v. Thurman,91 S.E. 887 (Ga.Ct.App., 1917), Hall County v. Luggins, 138 S.E.2d 699
(Ga.Ct.App., 1964). In addition to liability in the above area, a municipality may also be held liable to prisoners in a municipal jail for injuries from the negligence of a keeper, guard, or other person in charge of them. See 25 Fla. Jur. Prisons and Prisoners s. 22. Accordingly, the answer to your third question is that a city may be held liable for expenses incurred in the providing of food, clothing, shelter, and medical care for municipal prisoners, for the torts of municipal prisoners committed while acting within the scope of their duties, and for injuries to prisoners resulting from the negligence of the person in charge of them; if the prisoners are county prisoners rather than municipal prisoners, the responsibility for providing food, clothing, shelter, and medical care is in the sheriff of the county. The sovereign immunity of counties and municipalities has been waived, within certain limits, by Art. X, s. 13, of the State Constitution and s.768.28, F.S., as amended by Ch. 74-235, Laws of Florida. AS TO QUESTION 4: The elements of an arrest are as follows: (1) A purpose or intention to effect arrest under real or pretended authority; (2) An actual or constructive seizure or detention of the person to be arrested by a person having present power to control the person arrested; (3) A communication by the arresting officer to the person whose arrest is sought, of an intention or purpose then and there to arrest; and (4) An understanding by the person whose arrest is sought that it is the intention of the arresting officer then and there to arrest and detain him. [Melton v. State, 75 So.2d 291, 294 (Fla. 1954).] Section 901.17, F.S., states that an officer making an arrest without a warrant "shall inform the person to be arrested of his authority and the cause of arrest except when the person flees or forcibly resists before the officer has an opportunity to inform him or where giving the information will imperil the arrest." The Florida Supreme Court has ruled, on the theory that the law does not require the doing of useless things, that "when detention by an officer follows immediately a commission of an overt act of criminality or illegality, the offender must be aware, without formality, of his purpose to arrest." See Giblin v. City of Coral Gables, 149 So.2d 501 (Fla. 1963). Based on the foregoing authorities, I am of the opinion that all the elements of a valid arrest are present and a person is in custody when the person caught in the overt act of committing a crime forcibly resists or flees, is shot, and is taken to a hospital in an unconscious condition. AS TO QUESTION 5: I know of no case precisely on point with the factual situation set forth in your letter; the case law with which I am familiar which has a bearing on your questions is included in my answers to your questions 1-4.